# Commonwealth *v*. Murrano, Appellant.

*Criminal law—Murder—Death in perpetration of robbery—Common purpose—Evidence—Production of person jointly indicted.*

1. Where several persons participate in the common purpose of committing a robbery, and in doing so a shot is fired by one of

them killing a policeman, a conviction of one of the number of murder of the first degree will be sustained, and it is immaterial that the one convicted is not shown to have fired the fatal shot.

2. In such case where a severance has been granted, it is not error to produce before the jury the other persons jointly indicted with the prisoner, for the purpose of having witnesses identify them.

Argued January 3, 1923. Appeal, No. 410, Jan. T., 1922, by defendant, from judgment of O. & T. Phila. Co., Jan. T., 1921, Nos. 1091-2, on verdict of guilty of murder of the first degree, in case of Commonwealth v. Christopher Murrano. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Indictment for murder. Before MONAGHAN, J.

The opinion of the Supreme Court states the facts.

Verdict of guilty of murder of the first degree on which judgment of sentence was passed. Defendant appealed.

*Errors assigned* were (1-5) permitting production of persons jointly indicted with defendant, not quoting record, and (6) sentence, quoting it.

*John A. Boyle,* with him *Charles L. Guerin,* for appellant.

*Warren C. Graham,* Assistant District Attorney, with him *Samuel P. Rotan,* District Attorney, for appellee, cited: Com. v. Morrison, 266 Pa. 223; Com. v. Lessner, 274 Pa. 108.

OPINION BY MR. JUSTICE SCHAFFER, January 29, 1923:

Defendant, under sentence to death following his conviction of first degree murder, appeals, claiming there was error in his trial in two respects: first, that it was improper to produce before the jury, which was separately trying him, other persons then in custody jointly

indicted with him, for the purpose of having witnesses identify them, and, second, that the proofs were insufficient to warrant a first degree conviction. He also submits certain after-discovered evidence which he contends entitles him to a new trial.

From the testimony, the jury was justified in concluding that defendant, with four other participants in the homicide, on Wednesday, three days preceding it, appeared at a rooming house in Philadelphia after one of them had made arrangements for their lodging there; they stayed at this place until the night of the murder and did not thereafter return. Four of them, including defendant, were identified by the proprietor as having during that time lodged with her. After their arrest, one of them took a police officer to the house and pointed it out as the place where they had been staying. About midnight on Saturday, twenty or more men in a gambling house were suddenly confronted by eight or ten masked and armed intruders, who had entered the room where the gambling was going on and who, after ordering the gamblers to face the wall and put up their hands, proceeded to rob them. While this was in progress, deceased, a police officer, appeared at the door of the room with a command to the occupants to throw up their hands; instantly shots were fired, at least one of them by defendant, and the officer was killed. Following these shots, appellant and one of the gamblers took refuge under a table and a struggle ensued for the possession of a revolver which defendant had, the other man securing it; with it he shot defendant as the latter was escaping from the house, who shortly thereafter was found in the vicinity by policemen, seriously wounded, and placed under arrest. In addition to being identified by the man who shot him, defendant was identified by another of the gambling party as one of the masked and armed robbers, this witness testifying he obtained a full view of his features as a result of the handkerchief appellant used as a mask slipping down from his face. The others jointly in-

dicted with appellant, who were caught either on the premises immediately after the shooting or in attempting to escape, were also identified as members of the masked band participating in the robbery.

It, therefore, appeared the condemned was with other participants in the crime for several days prior to its commission, that he entered the house with them, masked and armed, and took active part in the robbery,— whether he actually fired the fatal shot or not he was responsible for whatever grew out of the unlawful act. "There may be responsibility for a homicide committed in the execution of a common design, although the plan did not involve taking life. All who join in a common design to commit an unlawful act, the natural and probable consequence of the execution of which involves the contingency of taking human life, are responsible for a homicide committed by one of them while acting in pursuance of, or in furtherance of, the common design, although not specifically contemplated by the parties, or even forbidden by defendant, or, although the actual perpetrator is not identified......Under this rule those who have joined in a common purpose to commit...... a robbery......have been held responsible for a homicide committed by their accomplices in the furtherance of the common object": 29 Corpus Juris 1073. This is the rule established by our own cases. In Com. v. De Leo, 242 Pa. 510, where murder was committed in the perpetration of a robbery, we said: "It is not material which of the two defendants fired the fatal shot. Both participated in a common purpose, the perpetration of a robbery, or the attempt to perpetrate that crime, in the commission of which the murder resulted. In the eyes of the law, both are equally guilty." The principle there laid down followed that announced in other cases cited in the opinion.

It is argued that as the dead officer was killed with a 32 calibre bullet, and the revolver defendant was alleged to have had was 38 calibre, he could not have done the

killing, and that it may not have been done by any of the robber band. Whether appellant or one of his fellow bandits fired the fatal shot makes no difference; it was shown no shots were fired except by the robbers; under the evidence, the jury had ample warrant for determining that one of them did the killing.

There was no error in permitting the production before the jury of the other participants in the crime who were in custody, in order that they might be identified by witnesses on the stand. Defendant was charged with a joint offense and had demanded and was granted a separate trial; this did not change the joint character of his misdeed, or deprive the Commonwealth of the right to have all the participants pointed out and identified from the witness stand, and thus aid in establishing that there was a combination to commit the crime, and who the conspirators were; identification of the others strengthened that of the accused on trial. Appellant had engaged with his accomplices to commit one of the gravest crimes known in the law; he carried with him into his trial the burdens and disadvantages to which his joint participation gave rise. He did not take the stand to deny his presence with the other criminals before or at the time of the crime.

The third proposition advanced by defendant, that he is entitled to a new trial because of after-discovered evidence, is without merit. The affidavits produced are for the purpose of weakening the identification of defendant and his pals by the proprietor of the lodging house. They do not have this effect from our reading of them and are not sufficient to warrant another trial.

A police officer having been slain in the discharge of duty by a band of outlaws, at the time of his killing actually engaged in robbery, the jury had full justification for determining that this murder was of the first degree.

The assignments of error are all overruled and the record remitted to the court below for the purpose of execution.