**Commonwealth v. Engel et al.**

*W. S. Sharpless*, district attorney, and *E. Eugene Eves*, for Commonwealth.

*Donald A. Lewis* and *Herbert L. Winkler*, for defendants.

KREISHER, P. J., February 21, 1951.—A partnership registered in the fictitious names docket as the owners of the Family Drive-In Theatre gives the partners' names as Israel Engel, Irving H. Engel, Jerome Engel and Joseph Engel.

During the early summer of 1950 this partnership constructed an open-air drive-in theatre in Scott Township, this county, and began exhibiting motion picture shows to the public for the usual price of admittance.

Scott Township has not voted to legalize the exhibition of motion pictures within the township on Sunday, in compliance with the Act of July 2, 1935, P. L. 599, sec. 3, so that under this act it is illegal to exhibit motion pictures on Sunday within this township.

Sometime after this Family Drive-In Theatre was opened to the public, in violation of the law, motion pictures were shown and a charge made therefor on Sunday, between the hours of 7 and 11 p.m. In consequence thereof the district attorney of this county, by the county detective, caused an information to be lodged against the proprietor, one of the partners, Joseph Engel, and after summary hearing before a justice of the peace within the township, the proprietor was adjudged guilty and sentenced to pay a $50 fine, in accordance with the act, which fine was duly paid. This procedure continued for some weeks until Sunday, October 15, 1950, at which time the county detective lodged an information against Joseph Engel, proprietor; William Emkey, manager; William Whytaskek, projectionist; Ruth Warburton, cashier; George Wech, ticket taker, and Robert Thomas, usher. On

October 20, 1950, a hearing was held before a justice of the peace within the township, at which time defendants pleaded not guilty and, after hearing, the justice of the peace found defendants guilty and sentenced them each to pay a fine of $50 and costs. Thereupon defendants gave notice of an appeal and furnished bond in the sum of $800, pending such allowance, and on October 23, 1950, a petition for appeal from the conviction was presented to this court, and upon presentation and after due consideration thereof, an appeal was allowed as prayed for.

The petition sets forth that the summary proceedings had before the justice of the peace were improper, illegal and invalid for the following reasons:

"(a) That the Act of July 2, 1935, P. L. 599, sec. 2, does not include employes within its meaning, nor does it subject employes to any penalty for working at a place where movies are exhibited on a Sunday; the liability under said section being limited to persons, etc., engaged in the exhibition of motion pictures on Sunday in a proprietary or managerial capacity.

"(b) That the owner or proprietor of such motion picture theatre or show place is not liable under this section unless he was actively engaged in the exhibition, or unless such exhibition was under his order, control and supervision."

On Sunday, October 22, 1950, motion pictures were again exhibited at this theatre. However, only a skeleton force was used, and the district attorney's office, by the county detective, lodged an information against the only persons he was able to locate present during the exhibition, to wit, Ruth Warburton, cashier, and Michael Albano, projectionist. After hearing, the justice of the peace adjudged these two defendants guilty, who posted bond, giving notice of an appeal, and thereafter, on petition to the court, an appeal was allowed.

Again on Sunday, October 29, 1950, motion pictures were again exhibited, and the county detective was only able to locate two persons engaged at the time in the motion picture exhibition, as the same was being operated by a skeleton force, and thereafter he lodged an information against William Sondershafer, projectionist, and Mrs. Josephine Siesko, cashier.

Again, on Sunday, November 12, 1950, motion pictures were again exhibited at this theatre, and again a skeleton force was used, and the county detective lodged an information against William Sondershafer and Mrs. Josephine Siesko, who, after hearing on both prosecutions, and having been found guilty by the justice of the peace, gave notice of appeal, filed bond, and thereafter the court, on petition, allowed the appeal.

It was agreed by counsel for the respective parties that all of these cases be disposed of at one time, and it was further stipulated and agreed between counsel at the time fixed for hearing before the court on this matter that the foregoing statement of facts were the facts, without taking testimony, and that the court consider the facts as stipulated in disposition of the appeals.

It was further stipulated that Joseph Engel, the proprietor, who took an appeal from the conviction with the other employes, has withdrawn his appeal, and it is our understanding that he has paid his fine and costs to the justice of the peace.

The act of assembly found in 4 PS §60 provides, inter alia, as follows:

"It shall be unlawful for any person, copartnership, association or corporation to conduct, stage, manage, operate or engage in any motion picture exhibitions, regardless of whether a charge of admission thereto or incidental thereto is made or whether labor or business is necessary to conduct, stage, manage or operate the same, on the first day of the week, commonly

called Sunday, after the hour of two o'clock post-meridian, unless the voters of the municipality have first voted in favor of motion picture exhibitions and sound motion picture exhibitions on Sunday as hereinafter provided, and in no case shall a person be employed as a projectionist or operator of motion pictures on Sunday or in or about motion picture exhibitions, unless he or she shall have had twenty-four consecutive hours of rest during the preceding six week days.

"Any person, copartnership, association or corporation violating any of the provisions of this section shall, upon conviction thereof in a summary proceeding, be sentenced to pay a fine of fifty dollars ($50.00), and in default of the payment of such fine and costs of prosecution, such person or any member or agent of any copartnership or association, or any officer or agent of any corporation, responsible for such violation, shall be imprisoned for a period of not more than ten (10) days."

The foregoing statute is a valid exercise of the police power of the Pennsylvania Legislature, and it has been held that the violation of the statute on successive Sundays is a separate and distinct violation, and that the offense is not a continuing offense, so that a prosecution may be instituted for each Sunday that the act is violated: Commonwealth v. Dattola, 22 Westmoreland 123.

Likewise it has been held as a general proposition of law that:

" 'Guilty knowledge or guilty intent is, in general, an essential element in crimes at the common law', but, 'whether a criminal intent, or a guilty knowledge, is a necessary ingredient of a statutory offense, is a matter of construction,' to be determined 'from the language of the statute, and in view of the manifest purpose and design of the same', . . . Intent need not be shown to support a conviction under a valid statute

in the exercise of police power. . . . In Com. v. Liberty Prod. Co., 84 Pa. Superior Ct. 473, in which numerous cases are collected, it is said: 'a mistake or omission, even though an innocent one, made in the line of his employment by an employee charged with the doing of something required to be done in order to render that lawful which otherwise, by a police regulation, would be unlawful, entails upon his employer responsibility for the illegal act resulting therefrom and subjects it to the penalty provided for such illegal act, unless the statute in terms limits it to wilful and intentional violations,' . . . 'Where a statute (in the exercise of police powers) commands that an act be done or omitted, which, in the absence of such statute, might have been done or omitted without culpability, ignorance of the fact or state of things contemplated by the statute, it seems, will not excuse its violation.' The reason for the rule is indicated by Chief Justice Cooley in People v. Roby, 18 N. W. 365, (Mich.) . . . 'Many statutes which are in the nature of police regulations, as this is, impose criminal penalties, irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible' ": Commonwealth v. Jackson, 146 Pa. Superior Ct. 328, 331.

It is a fundamental principle of law in the interpretation of statutes that where the language used in the statute is clear and unambiguous, one need not resort to the Statutory Construction Act for its interpretation. However, even though the terms of a statute may be clear, we believe it is proper for the court to take into consideration the rules of construction, and the presumptions set forth in the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §551, etc. It is an abstract proposition of law that the legislature in enacting a statute is presumed to have intended

that the words used in that statute shall be construed according to their common and approved usage, and the courts are bound to give effect to all of the provisions of a statute, as no part thereof is to be considered superfluous and without import.

The important words in the above-quoted statute, in our opinion, as relates to this case are that:

"It shall be unlawful for any person, . . . to conduct, stage, manage, operate or engage in any motion picture exhibitions, . . . on the first day of the week, commonly called Sunday, after the hour of two o'clock postmeridian, unless the voters of the municipality have first voted in favor of motion picture exhibitions and sound motion picture exhibitions on Sunday. . . ."

Defendants in this case are most certainly persons within the meaning of the act, giving to the word "person" its plain and obvious meaning. Likewise, it is our opinion, that defendants did "engage in" a motion picture exhibition, in violation of the act, when giving to the term "engage in" its clear, unambiguous, plain and obvious meaning. The term "engage in" has been construed in a great many types of cases, especially those involving interstate commerce, workmen's compensation, agriculture and other business, and its term has uniformly been held to denote "attention and effort", "to take part in", "to be employed in". Likewise, the term "engage in" connotes action, and it means occupied and employed.

The primary purpose of these defendants was to do exactly what the statute forbids, and their activities are so closely related to the conducting, staging, managing, operating or engaging in a motion picture exhibition as to be part of it, and subject to the penalties imposed therefor.

The courts, in interpreting and construing a statute, must keep in mind the evil that the legislature intended to remedy, and it is necessary for the court to endeavor

to determine the intent of the legislature by an examination of the entire enactment, including the title thereto. It is obvious that the legislature in passing this act intended to prohibit moving picture exhibitions on Sunday, unless the voters of the municipality voted in favor of motion picture exhibitions at the time. It is the duty of the court in interpreting and construing a statute to keep in mind that the legislature did not intend an absurd result, and the court is bound to use reasonableness and good sense in its interpretation and construction of an enactment.

Counsel for defendants argue that a prosecution under this act may only be instituted against the proprietor, and then only if he actively engages in the violation. Further, they contend that if the proprietor is prosecuted and he pays the $50 fine that then all other persons engaged in that exhibition are absolved from liability. In other words, counsel for defendants would have this court decree that the legislature intended by this act to establish a $50 license fee for the exhibition of illegal motion pictures on Sunday, and such conclusion, in our opinion, is an absurdity that the legislature most certainly did not intend. It seems perfectly obvious to us that in this day of huge capacity open-air drive-in theatres the mere payment of a $50 fee for the illegal operation on Sunday would be gladly paid by the management of the theatre, but the legislature, in our opinion, did not intend that this act be used for the imposition of a license or a fee of $50 for illegal exhibitions on Sunday, but rather they intended by this enactment to prohibit and prevent Sunday motion picture exhibitions, unless approved by the particular district by a favorable vote.

Counsel for defendants also contend that these defendants had no notice of their liability under this act and, therefore, they should not be found guilty. It is this court's opinion that these defendants not only had

constructive notice under the presumption of law that a person is presumed to know the law, but that they had actual notice and, in fact, legal advice, and this is demonstrated by the fact that prior to the instant prosecutions the proprietor himself was prosecuted and he paid the fine, so that these parties were put on actual notice of the act of assembly when the proprietor alone was prosecuted.

We are unable to find any former interpretation of this act to adopt, and we have not been able to find any prior construction of an act similarly worded, but we do believe that it is a well-established principle of law that the court in construing and interpreting a statute is bound to recognize the principle that the legislature in the enactment of a statute of this nature intended to favor public interest as against any private interest, and applying this principle to the act in question, the conclusion is obvious.

Likewise, we believe that the language of Mr. Chief Justice Maxey, in the case of Commonwealth ex rel. Moszczynski v. Ashe, Warden, 343 Pa. 102, 104, is applicable to the case at bar, wherein he states:

"It is immaterial, of course, that relator fired no shots as he and those who did fire shots participated in a common criminal purpose. See Com. v. Murrano. 276 Pa. 239. 'Collusion between parties to an illegal transaction makes the act of one the act of all', per Gibson, C. J., in Rogers v. Hall, 4 Watts 359. 'Concert of design does not necessarily involve participation in every detail of execution': Com. v. Strantz, 328 Pa. 33, 42."

From a review of the manner in which these defendants conducted these illegal exhibitions, it is apparent that they knew the law, and that they contrived to defeat the law by operating with a skeleton force on the Sundays subsequent to October 15, 1950. We believe that there is apparent a concert of design, and that

definite collusion between the parties to this illegal transaction is apparent and, as above stated, it is immaterial that one or the other of the parties did not actively participate in every detail of the illegal act, but the acts were so closely connected, and so necessary to accomplish the primary purpose of staging an illegal exhibition, that they are responsible for doing a prohibited act.

Without making this opinion unduly lengthy, we wish to cite one appellate court case, Hardy v. Gapen et al., 141 Pa. Superior Ct. 101, wherein it was held that a claimant for compensation who was employed by a dairy as a dairyman, and he was assisting in the making of hay when injured, was held to be engaged in "agriculture" within the meaning of The Workmen's Compensation Act, so as to exclude him from the benefits of the act.

Giving effect to the entire act above quoted, as applied to the above-stated facts, and giving to the words used in the act their plain and obvious meaning, and keeping in mind the intention of the legislature in passing this act, the evil to be remedied, and that public interest is favored over private interest, we believe the only reasonable and sensible conclusion is to hold that a person engaged in a motion picture exhibition, in violation of the said act, is guilty, and to this end we make the following

*Order*

And now, to wit, February 21, 1951, all of the above captioned appeals are dismissed, the judgment of the justice of the peace in each case is affirmed, and the district attorney is directed to proceed to collect the respective fines and costs imposed from the bonds heretofore filed by defendants, unless defendants pay the fine and costs within 10 days from the date hereof.