**People of the State of Illinois, Plaintiff-Appellee, v. Otis McNeil (Impleaded), Defendant-Appellant.**

**Gen. No. 51,553.**

First District, Third Division.

April 16, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Defendant, Otis McNeil, was charged with the crime of armed robbery. After he was found guilty of that charge by a jury, he was sentenced to a term of twenty to thirty years. On appeal, it is urged that defendant's motion to quash the search warrant was erroneously denied, that certain evidence introduced at trial by the State was not properly identified, that the trial court erred in allowing a complaining witness to identify a codefendant not on trial, and that the court erred in not conducting a hearing in aggravation and mitigation prior to sentence.

Prior to trial, defendant made a motion to quash the search warrant and to suppress the resulting evidence, contending that the search warrant was illegal. After a hearing, the trial court denied the motion, and certain

property seized as a result of the search, a fur coat, was introduced into evidence at trial. In view of the nature of the arguments on appeal, it is necessary to note only certain pertinent facts.

On September 2, 1965, two armed men wearing sheer nylon stockings over their heads entered the Berkowitz Fur Company located in downtown Chicago. Two employees were bound with tape and forced into the vault by the robbers, who then filled two bags with furs and departed. Both employees identified defendant as one of the robbers, and also identified a fur coat recovered from defendant's home as one which had been taken in the robbery.

Defendant first contends that the search warrant should have been quashed and the resulting evidence suppressed because the affidavit for the search warrant presented to the issuing court by the police officer did not supply sufficient probable cause to justify the issuance of the warrant.

The affidavit of the officer was presented on September 11, 1965. It stated that on that day the officer had received information from a confidential informant who had furnished him with reliable information in the past. The affidavit went on to state that the informant told the officer that he had been in the second-floor apartment at 2156 South Millard Avenue in Chicago, the residence of a female Negro named Frankie McNeil on the same day and had seen a quantity of mink stoles, jackets and fur coats, valued at about $50,000, which were the proceeds of an armed robbery of Somers Furriers, which occurred on the same day. On the basis of this affidavit, the search warrant was issued. A search of the aforesaid apartment in which defendant lived revealed the property for which the search had been authorized, the furs taken in the Somers robbery. (Defendant was also convicted of that crime, and the convic-

tion was affirmed by this court. People v. McNeil, 99 Ill App2d 273, 240 NE2d 721 (1968).) In addition, the search revealed a fur coat which was introduced into evidence in the instant case as having been taken in the Berkowitz robbery.

In making the argument that the affidavit for the search warrant was defective because it did not supply sufficient probable cause to justify issuance of the warrant, defendant relies on Spinelli v. United States, 393 US 410 (1969), and Aguilar v. Texas, 378 US 108 (1964). In Aguilar, the Supreme Court found the affidavit of police officers to be inadequate where the officers had sworn that they received reliable information from a credible person and believed that narcotics were being illegally stored on the described premises. The court held that the affidavit was inadequate because it failed to set forth the underlying circumstances necessary to enable the magistrate independently to judge the validity of the informant's conclusion that the narcotics were present, and because the affiants did not attempt to support their claim that the informant was credible or his information reliable. In Spinelli, the court also found that the affidavit for the search warrant was defective. The affidavit in question recited that the FBI had kept track of Spinelli's movements for several days and that he was seen entering a certain apartment, that the apartment had two telephone numbers, that Spinelli was known to the affiant and various law enforcement agencies as a gambler and bookmaker, and finally that the FBI had been informed by a confidential reliable informant that Spinelli was operating a handbook by means of the aforesaid telephones. Although it held that the affidavit was inadequate, the court stated as follows at p 416:

> "Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in

support of this conclusion. Perhaps even more important is the fact that Aguilar's other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him."

No such fault can be found with the affidavit in the instant case. There were not the general allegations in this affidavit which were found in the Aguilar and Spinelli affidavits. The instant affidavit explicitly stated that the informant obtained the information by personally visiting the premises and observing the relevant evidence. It also stated that the proceeds of a specifically named robbery which had occurred on that same day, valued at about $50,000, were to be found in the indicated apartment and that the informant had personally observed this stolen property in the apartment.

Almost identical to the instant case is Rich v. United States, 407 F2d 934 (5th Cir 1969). In that case, the agents stated in their affidavit that the informant had on repeated occasions in the past furnished reliable and credible information. The affidavit also stated that the informant had purchased obscene material from defendant in the past, that defendant had told the informant that he received the material by bus, that the material was late and defendant was flying to New Jersey to check on it. The affidavit also stated that affiants had seen defendant board a plane and return. The court found that the search warrant was adequate and that the search warrant was based upon probable cause.

██ We find People v. Parker, 42 Ill2d 42, 245 NE2d 487 (1969), cited by defendant, to be distinguishable

from the case at bar. In that case, the court found the affidavit inadequate and quashed the search warrant. The affidavit stated that the affiant had been told by an informant who had previously given information which proved to be true that the accused had a quantity of marijuana stored in his desk at his place of employment and at his home which the informer had personally observed. It also stated that the informer had purchased samples of this substance previously, and that it had proved to be marijuana. The court held that the affidavit was inadequate because it failed to inform the issuing magistrate as to some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable. Although the affidavit in the instant case recited merely that the officer had received information from an informant who had given him reliable information in the past, it went on to give far more specific and detailed information to the issuing judge than that in Parker. While the Parker affidavit stated that the informant had personally observed marijuana at accused's home and in a desk at work, the instant affidavit recited that the informant had personally observed furs in the approximate value of $50,-000 which had been taken in a robbery of Somers Fur Company, and that the Somers robbery had occurred on the same day that the search warrant was sought. We hold that the affidavit in the case at bar was adequate to provide probable cause for the issuance of the search warrant, and that the trial court did not err in denying the motion to quash the search warrant.

Defendant next contends that a fur coat introduced at trial was improperly identified and therefore erroneously introduced into evidence.

■■ Stolen property, if relevant and properly identified, is admissible at trial. See People v. Pittman, 28 Ill2d 100, 190 NE2d 802 (1963). In the instant case, the

fur coat in question was positively identified at trial by both employees of the fur company as one on which they had worked prior to the robbery. While one of the employees was uncertain as to when she had last worked on the coat, that uncertainty would affect only her credibility, and not the admissibility of the coat into evidence.

Defendant next argues that the trial court erred in allowing one of the State's witnesses to identify a codefendant not on trial in the presence of the jury. On cross-examination, defendant examined the State's witness Newman about his viewing the two robbers at a police lineup and about his identification of Philip Thomas as the other robber. After the State completed redirect examination of Newman, without objection by defendant, it recalled Newman. Then over objection of defendant, Thomas was brought into the courtroom, and Newman identified him as the other robber.

 Evidence which is not admissible of itself may become admissible if relevant to an issue which the opposing party has introduced. See Wiley v. Department of Public Works and Buildings, 330 Ill 312, 161 NE 783 (1928). Although Thomas was not on trial, and his guilt had no bearing on that of defendant, it was defendant who brought up the issue of Newman's identification of Thomas, apparently attempting to affect his credibility as to his identification of defendant. Consequently it was proper for the State in response to show who besides defendant the witness identified at the lineup. The jury was already aware of the existence and participation of Thomas, and once defendant placed in issue the witness's ability to identify him, the witness's courtroom identificaion of Thomas became relevant, and properly within the scope of redirect examination.

Defendant finally maintains that the trial court abused its discretion in failing to conduct a hearing in aggravation and mitigation prior to sentencing him.

The Criminal Code, Ill Rev Stats, c 38, § 1-7(g), provides as follows:

> "For the purpose of determining sentence to be imposed, the court shall, after conviction, consider the evidence, if any, received upon the trial and shall also hear and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the offender and may consider such evidence in aggravation or mitigation of the offense."

However, in the instant case, defendant did not request such a hearing, nor did he make any objection when the trial court imposed sentence after denying post-trial motions. Consequently we believe that the rule set forth in People v. Smith, 62 Ill App2d 73, 210 NE2d 574 (1965), is controlling. In that case, this court held that the burden of seeing that there is a hearing in mitigation belongs to the defendant, the party who has evidence to present. A defendant who fails to request this right to a hearing in mitigation waives it.

The judgment of the Circuit Court is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.