(No. 43197.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. OTIS McNEIL, Appellant.

*Opinion filed October 2, 1972.*

WARD, J., took no part.

WILLIAM J. MARTIN, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and ROBERT A. NOVELLE and JAMES VELDMAN, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

A jury in the circuit court of Cook County found Otis McNeil, the defendant, guilty of armed robbery, and he was sentenced to imprisonment for a term of not less than 20 and not more than 30 years. The appellate court affirmed (123 Ill.App.2d 285), and we granted leave to appeal.

The Berkowitz Fur Company in Chicago was robbed on September 2, 1965, by two armed robbers wearing sheer nylon stockings over their heads, who bound two employees with tape, filled several large bags with valuable furs, and departed. On September 11, 1965, Officer Robert Lopez of the Chicago Police Department appeared before a judge and filed the following affidavit in support of his request for a search warrant:

> "I Detective Robert Lopez, of the Chicago Police Department, on the 11th day of September 1965, received information from a confidential informant who has furnished me with reliable information in the past and who stated to me this date that he had an occasion to be in the above described premises located at 2156 S. Millard Ave. Chicago, Illinois which is the residence of Frankie McNeill—Female Negro—this date and while there saw in the premises a quantity of minks ladies stoles—jackets, and fur coats which are the proceeds of an Armed Robbery of the John D. Somers Furriers, located at 185 N. Wabash Ave. Room 316—Chicago, Illinois which

occurred on September 11, 1965. The estimate [*sic*] value of which is $50,000."

A mink coat which was stolen in the Berkowitz robbery was seized by Officer Lopez in the apartment named in the warrant, and was received in evidence. The defendant contends that his motion to suppress this evidence should have been allowed. The affidavit of Officer Lopez was the only evidence before the judge who issued the warrant, and the defendant argues that it was not legally sufficient in that it did not state any facts from which the reliability of the anonymous informer could be judicially determined.

In *People v. Parker (1968), 42 Ill.2d 42, 44,* similar affidavits were before the court. We there said: "Their sole allegation relating to the reliability of the informer is the general averment that he had 'previously given information to said complainant which proved to be true.' They do not reveal the character of this prior information or whether it led to arrests or convictions. Nor do they allege that the present information had been independently corroborated by the affiant or any other officers, other than the proof that the substances handed over were marijuana. Absent such factual allegations, or other grounds from which an issuing magistrate could reasonably credit the informer's accusation, the affidavits are defective and the warrants cannot stand."

The opening sentence in the defendant's petition for leave to appeal from the judgment of the appellate court stated, "The instant decision is contrary to *People v. Parker, 42 Ill.2d 42.*" This alleged conflict was a factor in our decision to allow the petition for leave to appeal. In the State's brief in this court, however, the *Parker* case is not mentioned. The affidavits in *Parker* were thus described in the opinion in that case: "The verified complaints for the warrants recited that the complainant, Kenneth Metcalf, a State narcotics inspector, 'has been informed by an informant who has previously given

information to said complainant which proved to be true' that Lawrence Parker had a quantity of marijuana stored in his desk at his place of employment and at his home which the informer had personally observed. They further recited that the informer had purchased samples of this marijuana from Lawrence Parker in recent months which had been turned over to the complainant, subjected to analysis and proved to be marijuana." 42 Ill.2d at 43-44.

Like the affidavit in the present case, those in *Parker* recited the statement of an unidentified informant as to what he had seen in the home of the accused. In each case what the anonymous informant says he saw, if true, would establish probable cause, and in neither case is there any reason to doubt that the officer was truthfully repeating what the informant said. The problem in each case is whether the affidavits contained information from which the magistrate could determine the credibility of the unknown informer.

We have examined the cases upon which the *Parker* case was based—*Aguilar v. Texas (1964), 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509,* and *Spinelli v. United States (1969), 393 U.S. 410, 21 L.Ed.2d 637, 89 S.Ct. 584*—as well as the more recent decisions of the Supreme Court in *United States v. Harris (1971), 403 U.S. 573, 29 L.Ed.2d 723, 91 S.Ct. 2075,* and *Whiteley v. Warden (1971), 401 U.S. 560, 28 L.Ed.2d 306, 91 S.Ct. 1031.* And while the question is a close one, we agree with the appellate court that the affidavit in the present case can be distinguished from *People v. Parker,* to which we adhere.

We have pointed out that in examining the issue of probable cause in cases involving the legality of searches, the constitution does not demand a naive evaluation of the facts by the judicial officer who issues the warrant. (*People v. York (1963), 29 Ill.2d 68, 70.*) In appraising the present affidavit the issuing judge was entitled to take into account the fact that the dominant feature of the present situation was the imperative necessity for quick action. The warrant

was issued at 3:40 P.M. The affidavit stated that the armed robbery of the fur store had occurred earlier that day. The circumstances related by the informer, if true, established that he had been inside the apartment in question after the robbery had taken place, and had there seen and identified the proceeds of the robbery. As a practical matter, the informer probably identified himself completely by the information which he gave to Officer Lopez, unless it is assumed that a large number of men had visited the apartment between the time of the robbery (which occurred at 12 noon on the day the affidavit was signed—see *People v. McNeil (1968), 99 Ill.App.2d 273, 275*), and the time of the issuance of the warrant. All of these circumstances, in our opinion, tend to indicate the trustworthiness of the affidavit.

It is true, of course, that the affidavit would have been more satisfactory if it had stated how the informer came to know the exact name, street address and room number of the corporate victim of the robbery, for it seems unlikely that the labels on the fur garments in the apartment would have contained the detailed information recited in the affidavit. The estimate of the value of the furs was unnecessary; if it was to be included, its source, whether the informant or the police officer, should have been stated. But perfection is not required, and a warrant issued after the affidavit had been rewritten to remedy these deficiencies might have been valueless.

We hold, therefore, that the search warrant was not fatally defective, and that the defendant's rights under the Federal and State constitutions were not violated by admission of the fur into evidence.

The defendant also contends that the trial court erred in permitting the prosecution, over objection, to bring Phillip Thomas, a co-defendant who had pleaded guilty prior to the defendant's trial, into the courtroom and causing him to be identified as one of the robbers by one of the victims of the robbery. Both of the employees who

were present in the Berkowitz Fur Company at the time of the robbery testified. One of them, Rose Sonnenblick, identified a fur coat, which was recovered when the search warrant was executed, as one upon which she had worked. She testified that two men, each carrying a gun, came into the shop. She identified the defendant as one of the men and testified that she was able to see his face clearly through the sheer nylon mask he wore, and that he had a moustache. She testified that McNeil led her into the vault and made her lie down on the floor with her face down while the men filled sacks with fur coats. She was unable to describe the color of the clothes worn by the robbers.

Ted Newman, the other employee, testified that shortly before noon on the day in question he saw two men walk into the shop, each carrying a gun. He identified Otis McNeil as one of them and testified that he had on dark tan trousers, a dark shirt and a small dark hat, and that both men were very shabbily dressed. He testified that nine days after the robbery he picked out the two men from 12 in a lineup at the Central Police Station, and that on that occasion he recognized McNeil by his walk. He also testified that he identified the two men by their "[f]aces and their mannerism, their walk and everything else."

On cross-examination he was asked:

> "Q. Now what did you do when you first saw them?
> A. Well, I kept quiet and the one fellow held a gun in front of me, in front of my face, that is Thomas, and Mc Neil walked around to the finisher."

After a brief re-direct examination, there was a short recess, and thereafter the State was granted leave to recall Newman as a witness. At a conference in chambers the attorney for the defendant stated that he assumed that Phillip Thomas was to be brought out to be identified by Newman, and objected to this procedure as prejudicial to the defendant. In the course of his objection he stated, "There has been no evidence introduced as to Phillip Thomas in this case and the showing of Phillip Thomas to the witness for identification is highly prejudicial to the

defendant's case." To this objection the court responded: "On cross examination you went into the fact that there was another man. He picked out two men in the line up and he said on cross examination on the question you asked him that the other man was Phillip Thomas. Now you can't keep the jury in the dark." The court's statement is not accurate because the only time Thomas's name had been mentioned at all was in the unresponsive answer quoted above.

Thomas was brought out and Newman identified him as one of the two men who committed the robbery and whom he identified at the lineup nine days later. The appellate court also disposed of the defendant's contention on the ground that the defendant had raised the issue of the identification of Thomas, saying: "Although Thomas was not on trial, and his guilt had no bearing on that of defendant, it was defendant who brought up the issue of Newman's identification of Thomas, apparently attempting to affect his credibility as to his identification of defendant. Consequently it was proper for the State in response to show who besides the defendant the witness identified at the lineup. The jury was already aware of the existence and participation of Thomas, and once defendant placed in issue the witness's ability to identify him, the witness's courtroom identification of Thomas became relevant, and properly within the scope of redirect examination." 123 Ill.App.2d at 291.

The record does not sustain the ground upon which the trial and the appellate courts justified the courtroom identification of Thomas. Our decisions have held that the kind of identification of a co-defendant, whose case has been severed, that was permitted in this case is erroneous. (*People v. Rezek (1954), 4 Ill.2d 164, 168-169;* see also, *People v. Haran (1963), 27 Ill.2d 229, 236; People v. Bennett (1953), 413 Ill. 601, 604.*) Decisions of other courts have affirmed convictions in which there was a similar identification of a co-defendant, but in no case that

we have found is there a discussion of the theory of admissibility. See, *e.g., Kendall v. State (Miss. 1971), 249 So. 2d 657; State v. Greene (1971), 255 S.C. 548, 180 S.E.2d 179; McClendon v. State (Fla. 1967), 196 So. 2d 905; Cody v. State (Okla. Crim. 1962), 376 P.2d 625; Commonwealth v. Murrano (1923), 276 Pa. 239, 120 A. 106.*

The *Rezek* case is squarely based upon a lack of relevance. "We can think of no relevancy of this testimony on the question of the guilt of this defendant. The identifying of the three codefendants as participants in the robbery certainly had no weight in determining whether the defendant had likewise participated therein. It was well calculated to prejudice the defendant in the eyes of the jury." (4 Ill.2d at 168-169.) It is true that the fact that a witness has accurately identified A as a participant in an occurrence has no direct bearing upon the accuracy of his identification of B as a participant in the same occurrence. But in some circumstances that fact may tend to indicate that the witness is an accurate observer, and thus be admissible by way of corroboration. The question would then be whether the corroborative value is outweighed by the prejudicial effect. In the present case, however, the proof of guilt is so strong that we are satisfied that the admission of this evidence could not have affected the result.

The defendant also contends that the trial court erred in passing sentence without hearing evidence in mitigation and aggravation. This contention, however, is not available because no effort was made in the trial court to introduce such evidence in this case.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.