THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEONARD KINCAID *et al.*, Defendants-Appellants.

(No. 57949;

First District (3rd Division)—August 1, 1974.

James J. Doherty, Public Defender, of Chicago (Phillip A. Olson and John M. Kalnins, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Mary Ellen Dienes, and Michael F. Baccash, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court.

The defendants, Leonard Kincaid and James Mitchell, Jr., were charged with rape in violation of section 11—1(a) of the Criminal Code, and with the offense of contributing to the sexual delinquency of a child in violation of section 11—5 of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, pars. 11—1(a) and 11—5). After a bench trial Kincaid was found guilty of rape and sentenced to the penitentiary for a term of not less than 4 nor more than 12 years. James Mitchell, Jr., was found guilty of contributing to the delinquency of a child in that he attempted an act of sexual intercourse against her will. The common-law record states that Mitchell was found guilty of "contributing to sexual intercourse of a child in manner and form as charged in the indictment." Mitchell was sentenced to the House of Correction for 1 year. Both defendants have appealed.

The issues on appeal are whether Kincaid was found guilty of rape beyond a reasonable doubt; whether there was reversible error due to an alleged variance between the indictment of Mitchell and the findings of the trial judge; whether Kincaid was denied a hearing in mitigation; whether the trial judge abdicated his discretion in sentencing Kincaid; and whether section 11—1(c) of the Criminal Code is constitutional.

The victim testified that on September 7, 1971, at approximately 9:30 P.M., she and a friend went to a restaurant at 103rd Street and Michigan Avenue in Chicago. After leaving the restaurant the friend left and the victim started to walk to her home located on State Street, where she lived with her mother. As she walked west on 103rd Street she saw a green Thunderbird in which sat two people whom she knew as Mitch

and Kincaid. She had known each of them for about 1 year. She identified both defendants in open court.

The victim entered the car to be driven home. When they passed the intersection of 103rd and State Streets, she said, "I thought you were going to take me home; why didn't you all turn down State Street?" They said nothing and Kincaid grabbed her by the neck. She tried to climb over Kincaid and open the window but could not roll it down. When she tried to fight him he grabbed her legs.

The victim testified that the car stopped at Bishop and 108th Streets and Mitchell got out; she tried to get out behind him but Kincaid held her arm. When Mitchell returned to the car he and Kincaid forced her into the back seat and removed her pants and underpants. She was crying and attempted to push Kincaid away with her hands; he put his fingers into her vagina, and later put his penis into her vagina and was going up and down for about 15 minutes. When Kincaid finished he got out of the car and she started to get up, but Mitchell climbed around to the back seat and pushed her down. He put his penis into her vagina and was going up and down for about 10 or 15 minutes; she was crying and was scared. On cross-examination the victim said Mitchell stuck his penis into her vagina and was going up and down, but she did not know whether his penis was soft or hard.

The victim testified that she was allowed to put on her shorts and pants; that when she got out of the car to get into the front seat she tried to run but Kincaid grabbed her by the wrist and pushed her back into the car; and that they drove back to 103rd and State Streets, where she got out and ran into the house. She said she told her mother what had happened and the police were called. Later, when she took off her clothes while being examined at Roseland Community Hospital, she noticed that her pants "had white stuff in the seat."

The victim further stated that she was not and had never been married to Mitchell or Kincaid and had never agreed to have sexual intercourse with either of them. She said she was 16 years old on September 7, 1971, and that it was the first time she had had sexual intercourse.

The victim's mother testified that her daughter left the house to go to the store at about 10 P.M. on September 7, 1971; that she returned home at about 11:45, crying, and said she had been raped. The police were called and they took the girl to the Roseland Community Hospital for examination. She was also examined by Dr. Walters, the family doctor, on September 9.

Police Officer John Carioscia testified that on September 7, 1971, at 11:59 P.M., he responded to a call and talked to a young woman and her mother; he then took them to the Roseland Community Hospital

where the girl was examined by Dr. Hernandez. On cross-examination Carioscia testified that the girl's clothes were in a mess and she was in a slight state of shock, and he told the hospital personnel he had a rape victim. On redirect examination Carioscia testified that the girl told him she knew the people who had assaulted her and gave him the names Kincaid and Mitch; that one lived in Princeton Park and one in Morgan Park, and that she had known them from school.

It was stipulated that if Dr. Hernandez was called to testify he would state that on September 8, 1971, he had occasion to examine the victim at Roseland Community Hospital; that he made a vaginal examination with a smear from the victim and that tests made of the smear showed positive presence of spermatozoa. It was further stipulated that if Dr. J. Elliott Walters was called to testify he would state that on September 9, 1971, he examined the victim at his office; that he conducted a pelvic examination which failed to reveal any evidence of physical trauma; and that the patient was being treated for vaginitis.

It was further stipulated that at the time of trial Kincaid was 20 years old and Mitchell was 21 years old.

Each of the defendants and two other defense witnesses testified that during the night of September 7, 1971, Kincaid and Mitchell attended a party in Markham, Illinois, during the entire period the victim testified she was with them, which included the time she was allegedly raped. Both defendants denied raping the victim, denied that they were with her that evening, and denied that they were in any of the places she claimed they were during that evening.

The trial judge, in commenting on the testimony, stated that in his opinion the victim was telling the truth, and that he did not believe the testimony of Kincaid and Mitchell or their alibi witnesses. He further stated that in his opinion Kincaid "committed rape on the young lady"; that Mitchell was not guilty of rape; that it is not clear, concise and convincing that Mitchell inserted his penis; that there was no penetration; that there was lewd fondling and touching; that he attempted an act of sexual intercourse against her will; and that Mitchell was therefore guilty of contributing to the delinquency of a child because he attempted an act of sexual intercourse against her will.

Kincaid argues that he was not found guilty of rape beyond a reasonable doubt because on cross-examination the victim testified that she did not know if Kincaid had had intercourse with her. Kincaid admits that the victim did testify he had intercourse with her, but argues that her admission that she did not know if he had sexual intercourse with her must be considered as raising a reasonable doubt as to the guilt of rape. The record discloses that the victim testified Kincaid "got on top

of her and put his penis into her vagina and was going up and down for about 15 minutes." The victim's mother testified that immediately after her daughter arrived home she said she had been raped. Police Officer John Carioscia testified that the victim told him she had been raped by Kincaid. The stipulated testimony of Dr. Walters was to the effect that he treated the victim for vaginitis. It was further stipulated that a medical examination made shortly after the reported rape showed the presence of spermatozoa.

■■ In reviewing a conviction for the crime of rape a reviewing court is charged with a special duty to exercise the utmost caution and circumspection in scrutinizing the sum and substance of the evidence upon which the conviction is predicated. However, the trial court was in a superior position to judge the credibility of witnesses and the weight to be given their testimony, and the reviewing court will not disturb the court's judgment unless the evidence was so unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Pointer* (1972), 6 Ill.App.3d 113, 285 N.E.2d 171.) The testimony of the victim alone is sufficient to support a conviction if that testimony is found to be clear and convincing. *People v. Davis* (1957), 10 Ill.2d 430, 140 N.E.2d 675; *People v. Wright* (1972), 3 Ill.App.3d 829, 279 N.E.2d 398.

■■ In the case before us the trial judge stated that in his opinion the victim was telling the truth; that he did not believe the testimony of Kincaid, Mitchell or their alibi witnesses; and that in his opinion Kincaid "committed rape on the young lady." Under such circumstances, the judgment of the trial court should be affirmed.

Mitchell argues it was reversible error for the trial judge to make a finding of guilty on the charge of contributing to the delinquency of a child upon an indictment "which charged only that the defendant 'performed an act of sexual intercourse with' the complainant, even though the trial judge, sitting as the trier of fact, found that there was no penetration." Mitchell further argues that there is such a variance between the trial court's finding and conviction that his conviction for the offense of contributing to the sexual delinquency of a child must be reversed. Mitchell also contends that the defendant must be informed of the crime of which he is charged; that in the present case he was not so informed; and that he was therefore found guilty of a crime not charged.

Mitchell was charged by indictment with the offense of contributing to the sexual delinquency of a child in that he performed an act of sexual intercourse with the victim, a child under the age of 18 years, in violation of section 11—5(a)(1) of the Criminal Code. The common-law record recites that Mitchell was found guilty of "contributing to

sexual intercourse of a child in manner and form as charged in the indictment." The finding of the trial court was as follows: "I cannot in good conscience find Mr. Mitchell guilty of rape. There is that thing in there about, 'I don't know what it was' on cross examination. And he did go up and down. But it's not clear and concise and convincing. I am—I am going to find him guilty to the contributing to the delinquency of a child in that he attempted it; I don't think that there was penetration, and there must be a penetration. So I will find him guilty of contributing to the delinquency of a child because he attempted an act of sexual intercourse against her will."

From the foregoing it is apparent that there is a discrepancy between the common-law record and the transcript. Although the common-law record imports verity and is presumed correct (*People v. Cleggett* (1961), 22 Ill.2d 471, 177 N.E.2d 187; *People v. Pahl* (1970), 124 Ill. App.2d 177, 260 N.E.2d 405), where there are other facts appearing which are contradictory the court should consider the matter upon the record as a whole. *People v. Williams* (1963), 27 Ill.2d 327, 189 N.E.2d 314; *People v. Brown* (1973), 14 Ill.App.3d 196, 302 N.E.2d 101; *People v. Caruth* (1972), 4 Ill.App.3d 527, 281 N.E.2d 349.

■■ In the instant case the indictment charges defendant with contributing to the sexual delinquency of a child in violation of section 11—5(a)(1) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 11—5(a)(1)) in that he had intercourse with the victim who was under the age of 18 years. By statute, attempt to commit a crime is a lesser included offense of the substantive charge (Ill. Rev. Stat. 1969, ch. 38, par. 2—9(b)). Here, the trial judge's finding quoted above clearly indicates that the defendant did not achieve penetration, and that the trial court was therefore finding the defendant guilty of the attempt of contributing to the sexual delinquency of a child in violation of section 8—4 and section 11—5(a)(1) of the Criminal Code. Since this was a lesser included offense of the crime charged, there was no fatal variance between the indictment and the finding of the trial court. (*People v. Rosochacki* (1969), 41 Ill.2d 483, 244 N.E.2d 136.) Defendant was informed of the crime with which he was charged; he was in no way surprised at trial, and there is no evidence that he suffered any prejudice. *People v. Simental* (1973), 11 Ill.App.3d 537, 297 N.E.2d 256.

Because of the conclusion we have reached—that defendant was found guilty of the attempt of contributing to the sexual delinquency of a child—it is obvious that the trial court's record and *mittimus* are in error. The case of James Mitchell, Jr., is remanded to the trial court with directions to correct the record and to issue an amended *mittimus* showing that defendant was found guilty of attempt to contribute to the

sexual delinquency of a child by attempting an act of sexual intercourse.

Kincaid argues that he was denied a hearing in mitigation as required by section 1—7(g) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 1—7(g)). After Kincaid was found guilty the trial court proceeded with a hearing in aggravation and mitigation. After the assistant State's Attorney made some statements in aggravation there was the following discussion between the court and counsel:

> THE COURT: Oh, all right. Do you wish to say anything in mitigation? There is nothing you could do now. I am bound by the legislature to a minimum on this. No matter what you say, whatever his problems are, it's a minimum of four. And I use the American Bar Association time; that's four to twelve. You can say anything you wish.
>
> MR. MOROWITZ [Defense Counsel]: Will he be eligible for a parole?
>
> THE COURT: In probably 24 to 26 months; a little over two years. All right, there will be judgment on that finding.

The record clearly shows that Kincaid had an opportunity to present evidence in mitigation. The failure to present such evidence after an opportunity was given constituted a waiver of any right to a hearing in mitigation. (*People v. Brown* (1971), 2 Ill.App.3d 368, 276 N.E.2d 452; *People v. Dennis* (1970), 47 Ill.2d 120, 265 N.E.2d 385, *cert. denied*, 403 U.S. 907; *People v. McNeil* (1972), 52 Ill.2d 409, 288 N.E.2d 464.) It is therefore apparent that the trial court did not deny Kincaid a hearing in mitigation.

■■ Kincaid also argues that the trial court "did mechanically follow the American Bar Association recommendation and the evil of 'computerized justice' foreseen in the Winston case [*People v. Winston* (1972), 4 Ill.App.3d 467, 281 N.E.2d 432] became a reality." The trial judge sentenced Kincaid to a minimum of 4 years and a maximum of 12 years in the penitentiary. The sentence was in accordance with section 11—1(c) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, par. 11—1), which was controlling at the time of the occurrence and provided as follows:

> "A person convicted of rape shall be imprisoned in the penitentiary for any indeterminate term with a minimum of not less than 4 years."

At the present time rape is a Class 1 felony (Ill. Rev. Stat. 1973, ch. 38, par. 11—1). Section 5—8—1(b)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(b)(2)) provides that "for a Class 1 felony, the maximum term shall be any term in excess of 4 years."

Kincaid argues that it was error for the trial court to impose a 12-year

maximum sentence; that the court, in using the American Bar Association guide, was under the erroneous impression the maximum sentence must be three times the minimum sentence, and that since the minimum sentence for rape is 4 years, the trial court imposed a sentence of "four to twelve" years. There is nothing in the Code that there must be a "one-third spread" between a maximum and minimum sentence for a Class 1 felony, although a one-third spread is provided for in section 5—8—1(c) (3) for a Class 2 felony, and in section 5—8—1(c)(4) for a Class 3 felony.

In the case before us, the trial judge did not "mechanically" follow the American Bar Association guide, but used his discretion in choosing the maximum sentence to be imposed. He could have chosen other guides to aid him in determining the maximum term of imprisonment, thereby making the maximum sentence either more or less than the 12 years imposed. It is clear from the record that the trial court chose to use the American Bar Association guide, not that he was compelled to use it, and therefore, the "evil of computerized justice" was not present.

■■ A sentence imposed by the trial judge who saw Kincaid, and was therefore in a better position to appraise him and to evaluate the likelihood of his rehabilitation than a reviewing court, should not be reduced unless there are substantial reasons for doing so. (*People v. Taylor* (1965), 33 Ill.2d 417, 211 N.E.2d 673; *People v. Kendricks* (1972), 4 Ill.App.3d 1029, 283 N.E.2d 273.) The sentence was within the statutory provision, and since there is no showing that the trial court abused its discretion in sentencing Kincaid to a term of not less than 4 years nor more than 12 years, the sentence should be affirmed. *People v. Moore* (1971), 50 Ill.2d 24, 276 N.E.2d 319.

Kincaid finally argues that the 4-year minimum sentence provided for in section 11—1(c) of the Criminal Code is unconstitutional, as a usurpation by the legislature of judicial discretion, since under the minimum-sentence provision the trial court had no discretion to sentence Kincaid for a minimum sentence of less than 4 years.

A similar contention was rejected by the court in *People v. Moore* (1973), 15 Ill.App.3d 691, 304 N.E.2d 696. Section 11—1(c) of the Criminal Code is constitutional.

The judgments of the trial court are affirmed, and the case of James Mitchell, Jr., is remanded to the trial court with directions to correct the record and to issue an amended *mittimus* showing that James Mitchell, Jr., was found guilty of the attempt of contributing to the sexual delinquency of a child by attempting an act of sexual intercourse.

Judgments affirmed; case of James Mitchell, Jr., remanded with directions.

McNAMARA, P. J., and McGLOON, J., concur.