THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JEROME COLLINS, Defendant-Appellant.

Second District (2d Division)   No. 75-490

Opinion filed February 1, 1977.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Philip Reinhard, State's Attorney, of Rockford (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was charged with possession of less than 30 grams of a substance containing heroin. He was convicted in a bench trial on both counts and was sentenced to not less than 4 nor more than 12 years in the penitentiary.

The sole issue in this appeal is whether the search warrant authorizing the police to search the defendant's premises for heroin was properly issued. The search warrant described the premises to be searched as "1317 West St., that grey two story residential building on the west side of West St. the second house south of Montague facing West St.," in the City of Rockford. Actually, the described building contained two apartments, of which the defendant occupied only the first floor apartment.

The affidavit in support of the search warrant stated that the complainant, Charles Bishop, a Rockford police officer, and another officer, Detective Combs, were narcotics investigators, that within the past three days they had brought an informant to the City Narcotics

Bureau, stripped him and removed all his personal property, had then given him a $20 bill and taken him to the location described in the search warrant, where they observed him enter the described building; that less than 15 minutes later the informant returned with two tinfoil packets which he handed to the officers, saying he had bought them from the defendant. The affidavit also recited that the named defendant was listed in the telephone directory at the address indicated in the application for the search warrant.

Pursuant to the search warrant which was issued on the basis of the above described affidavit, police officers raided the building four days later and found the defendant and several other men sitting at a table in the kitchen of the first floor apartment, on which table the police found a number of foil packets, needles and other paraphernalia associated with narcotics. The defendant also had a loaded revolver in his pocket which the police took from him.

In this appeal the defendant contends the affidavit in support of the search warrant did not satisfy the requirements for issuance of a search warrant which are set forth by the United States Supreme Court in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and by the Illinois Supreme Court in *People v. Parker* (1968), 42 Ill. 2d 42.

In *Aguilar* the affidavit simply stated as follows:

" 'Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law.' " 378 U.S. 108, 109, 12 L. Ed. 2d 723, 725.

This affidavit was held insufficient by a majority of the justices. The majority opinion, by Justice Goldberg (referring to a standard enunciated in the case of *Giordenello v. United States* (1958), 357 U.S. 480, 2 L. Ed. 2d 1503, 78 S. Ct. 1245), stated:

"The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' " 378 U.S. 108, 113, 12 L. Ed. 2d 723, 728.

The court went on to say that the affidavit was insufficient because the magistrate could not, from its contents, judge for himself the persuasiveness of the facts recited in the affidavit to show probable cause. A two-pronged test was set up in *Aguilar* for testing the sufficiency of the affidavit, that is:

"[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the

narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, * * * was 'credible' or his information 'reliable.' " 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729.

This case was followed by *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, where a divided court again held the supporting affidavit insufficient to validate the search warrant. Spinelli was suspected of gambling activities. The FBI observed his actions, which they deemed suspicious. All that was recited in the affidavit, however, was that the defendant had been observed going between certain points in Illinois and Missouri, that he had an apartment with two telephone numbers in another person's name, that he was "known" to the affiant as a gambler and that the FBI "has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers * * *."

Five members of the court held this affidavit to be short of the standards set by *Aguilar*. However, in a strong dissent three justices expressed the opinion that under a "common sense" evaluation the affidavit was sufficient.

Some doubt was thrown on the *Spinelli* decision by the case of *United States v. Harris* (1971), 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075, where the court upheld an affidavit which recited that the suspect "has had a reputation with me for over 4 years as being a trafficker of nontaxpaid distilled spirits"; that another constable had "located a sizeable stash of illicit whiskey in an abandoned house under Harris' control during this period of time"; and that an informant who "fears for their [*sic*] life" and whom the affiant interviewed and found to be "a prudent person" had "purchased illicit whiskey from within the residence described, for a period of more than 2 years, and most recently within the past 2 weeks, * * *."

■■ In *Harris* we believe the court returned to the clearcut test set forth in *Aguilar* which is that the affidavit inform the magistrate of some of the underlying circumstances from which the informant could conclude the narcotics were where he claimed they were and of some of the underlying circumstances from which the officer making the affidavit could conclude that the informant was "credible" or his information "reliable."

The defendant contends that under the Illinois Supreme Court case of *People v. Parker* (1968), 42 Ill. 2d 42, 43, which followed *Aguilar* standards, the affidavit in the case before us is deficient, in that the informant is not shown, by any circumstances related in the affidavit, to be a "reliable" person.

In *Parker* the affidavit recited that the complainant, a State narcotics inspector, "has been informed by an informant who has previously given information to said complainant which proved to be true," that Lawrence Parker had a quantity of marijuana stored in his desk at his place of employment and at his home which the informer had personally observed. Also, that the informer had purchased samples of this marijuana from Lawrence Parker in recent months, which was subjected to analysis and proved to be marijuana. The supreme court held that this affidavit failed to meet the second requirement set up in *Aguilar* that is, it did not set forth the underlying circumstances by which the officer concluded the informant was reliable. The mere assertion by the affiant that the informant had previously given information which proved to be true was not deemed sufficient.

In the later Illinois Supreme Court case of *People v. McNeil* (1972), 52 Ill. 2d 409, the affidavit was upheld, the court stating that while it continued to adhere to the *Aguilar* standards the *McNeil* case could properly be distinguished from *Parker* under those standards. The *McNeil* case involved a robbery of a fur store. On the same day as the robbery occurred, a search warrant was issued on the basis of an affidavit by an unidentified informant stating that he had observed the stolen furs in the house for which the warrant was sought. Justice Shaefer distinguished the *McNeil* case from *Parker*, apparently on the ground that the affidavit was given on the same day the robbery occurred and there was imperative necessity for quick action to forestall removal of the stolen furs. It was implied in the opinion that the informant had necessarily identified himself to the police by the information he gave and his detailed information implied he had actually been where he said he was and had seen what he claimed to have seen.

In the recent case of *People v. Thomas* (1975), 62 Ill. 2d 375, 377-78, an affidavit was upheld by our supreme court which, as to the informant's credibility, merely stated that:

> "A. Said informant has furnished affiant with information on four prior occasions which information has resulted in four purchases of marijuana or dangerous drugs and that arrests are pending on these four purchases."

The *Thomas* case was distinguished from *Parker* on the ground that the informant's reliability was sufficiently indicated in the *Thomas* case by the recital of four previous occasions in which the information given by the informant had resulted in four purchases of marijuana and "arrests are pending on these four purchases."

■■ While the defendant contends that the reliability or credibility of the informant is no more shown by the affidavit in the case before us than in the *Parker* case, we discern a considerable difference. In the case

before us the credibility of the informant was greatly reinforced by the circumstance that the police officers making the affidavit had personally observed the informant go into the house in question, having nothing but a $20 bill on his person and emerge a few minutes later with two tinfoil packets containing heroin. The evidence was not conclusive that the informant bought the heroin from the defendant but entirely aside from the question of the informant's credibility, the circumstances were sufficient to make it quite believable that he purchased the heroin while in the house and since it was the defendant's apartment he went into, it is logical to suppose that he purchased it, as he related, from the defendant. Thus, the question of the informant's reliability as a person is not critical in establishing that he bought this particular heroin on this particular occasion at this particular location. It would require straining the imagination to conclude otherwise. Likewise, there can be no doubt from the circumstances related in the affidavit that the heroin was in the place where the informant said it was—it was not with the informant when he went into the house, so it must have been procured within the house. The only question of credibility is as to the actions of the police officer making the affidavit and that, of course, is not an issue here. The Illinois Supreme Court has held that an accused would not be allowed to go beyond the four corners of a search warrant to challenge its issuance on probable cause. (*People v. Bak* (1970), 45 Ill. 2d 140.) Assuming then, as we must, that the officers did strip the informant so that he had nothing on his person except the $20 bill when he went into the house, and that the officers did observe the informant enter the house and emerge minutes later with heroin, the test of *Aguilar* was met, in our opinion.

The defendant also contends that the search warrant did not adequately describe the premises to be searched since the building contained two apartments and the precise apartment to be searched was not designated in the search warrant. Therefore, the defendant says, the warrant did not leave the officers without doubt or discretion as to where to search, being therefore defective.

The prohibition of the fourth amendment, however, is as to unreasonable searches and seizures. There is no reason to suppose that the police officers in this case knew there were two apartments in the building in question and the failure to designate the apartment to be searched did not make the search warrant unreasonably broad. In any event, however, the search was conducted only in the downstairs apartment occupied by the defendant and there is no ground for holding the warrant to be too broad in its description where, as a matter of fact, the search was confined to the proper apartment, merely because, unknown to the police, the building had two apartments instead of being a single house.

■■ In *People v. Hartfield* (1968), 94 Ill. App. 2d 421, 424, the court

considered a similar contention. In that case the premises to be searched were described as "818 North 24th Street, Second floor, East St. Louis, Illinois," without designating which apartment on the second floor. Actually, the other apartment was vacant and there was no reason to suppose that the informant or the police knew that there was another apartment on the second floor. Only the defendant's apartment was actually searched. The defendant, however, contended the warrant was not valid since it did not designate the particular apartment to be searched and was therefore invalid when it was issued. The court, in rejecting this contention, cited language from the case of *United States v. Poppitt* (D. Del. 1964), 227 F. Supp. 73, 77, as follows:

> "It would seem that if an affiant has reasonable grounds for believing that an entire building should be searched, a warrant directing such a search should be sustained, even if it be later shown that affiant's belief was erroneous, provided the search is actually restricted to the part of the building to which the warrant should have been directed." 94 Ill. App. 2d 421, 427-28.

The court concluded in the *Hartfield* case that the search was legal since it was restricted to the part of the building to which the warrant should have been directed. We see no reason to hold otherwise under the circumstances of the case before us.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.