**People of the State of Illinois, Plaintiff-Appellee, v. Otis McNeil (Impleaded), Defendant-Appellant.**

**Gen. No. 51,423.**

First District, Fourth Division.

September 18, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John M. Goldberg, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant appeals his conviction by a jury of the crime of armed robbery for which he was sentenced to serve fifteen to twenty-five years. On appeal he contends (1) that his confession was not voluntarily made and therefore was not admissible, (2) that the confession was barred because it was an unsigned hearsay document, (3) that some of the evidence was the product of an illegal search and seizure, and (4) that he was prejudiced by the failure of the State to connect him with certain evidence introduced against him.

At the trial John D. Somers testified that on September 11, 1965, at twelve o'clock noon three armed men entered his fur salon, two wearing stockings over their heads and a third with a handkerchief over his mouth; that the men forced everyone to lie on the floor and then tied their hands together and that the men took $285 in currency and forty-one mink garments worth $75,000. He identified People's Exhibit 1 as a garment bearing both his label and his garment number. He said he called the police five minutes after the occurrence, that thirty of the items were returned to him on September 13 and that he could not identify any of the three men.

William J. Trigg testified that he was a detective of the Criminal Intelligence Unit of the City of Chicago, that at two-thirty in the afternoon of September 11 he was on the second floor of a building located directly across from 2156 and 2158 South Millard Avenue with a walkie-talkie and binoculars, that he saw defendant in the company of David Moore, Phil Thomas and another man and that he observed defendant making three trips between 2156 and

2158 South Millard. He said on one of the trips defendant went from the second floor of 2156, where he lived with his parents, to the second floor of 2158 carrying a bed sheet tied together at the four corners with what appeared to be piece of fur sticking out.

Detective Robert Lopez testified that he executed a search warrant and searched defendant's apartment on the second floor of 2156 South Millard, that he found there seven fur pieces with the label "John D. Somers" in them and that one of these fur pieces was People's Exhibit 1.

There was testimony that twenty-eight fur pieces with the label "John D. Somers" were recovered at 2158 South Millard. Two nylon stockings with the bottoms removed and a knot tied in each end, taken from a black Mustang parked in a garage behind 2156 South Millard, were also placed in evidence. Detective Milton Deas testified that the registration for the 1965 Mustang was in the name of David Moore.

Defendant's statement to the police was admitted into evidence as People's Exhibit 6 and was read to the jury. In part it stated:

> We drove downtown this morning about 10:00 o'clock looking for a place in which we could rob. We went to several places and they were too hard, so we found this place on Wabash, which looked relatively easy. However, when we got in there we found that there were seven people in there. Instead of the three that we saw in the front, those that I mentioned before were there. So we made them lay on the floor at gun point. Then I went into the vault and started to put coats in a waste basket, the kind that is on wheels. I loaded it up, then I said Let's go. They then marched the people in the vault and we left. We pushed the waste basket to the alley where the car was parked and loaded it into the car and

left. We went to my house at 2156 Millard. I sneaked the car into my garage so my parents would not see it. The car was a '65 Mustang, black two door. Then I tried to find someone to buy them, all of them, which I was unable to do. I was in the process of looking when I was arrested.

* * * * * *

First when we arrived at my house, I put the car into my garage and we all walked out to the front steps of my house. Fred, Phil and Dave remained on the front steps until I walked around to Emil Dennmark to get rid of the guns. When I came back, I went into the house, alone, and got some bed-spreads and pillow cases. I went into the garage and got the furs. I put them in the bedspread and the pillow cases. The ones I put in the spread, I put back into the car. The ones in the pillowcase, I hid in my friend's room and then I came back to the house.

* * * * * *

He lives next door to me, and he wasn't at home.

The statement described the other participants as Phillip Thomas and Fred McNeil who entered the store, and David Moore who drove the car. Defendant said he wore a handkerchief as a mask and Phillip and Fred wore stocking masks.

Defendant first contends that his confession was coerced and therefore should not have been admitted into evidence. At the hearing on his motion to suppress the confession defendant testified that he was beaten and harassed by police officers and was made to confess by police threats to keep defendant's father, who was ill, in custody and to arrest defendant's mother. The evidence shows that defendant's father and mother occupied the apartment in which stolen furs were found; the father

277

was in custody of the police and was released after defendant made his statement. Three police officers testified that no one struck defendant and that no threats were made.

The trial judge in denying the motion to suppress the confession stated:

> I've listened attentively to all the evidence here and there isn't any question in the court's mind that this was a free and voluntary statement.
>
> . . . . . .
>
> Now, the police would be really derelict in their duty if they didn't bring Otis McNeil, Sr. into the police station where in his apartment the proceeds are found, in the apartment, and he had evidently knowledge of it, or if he didn't they expected that he did and they would have been derelict in their duty and subject to criticism if they didn't take him down to 11th and State to find out what the contraband was doing in that apartment with two of the other defendants.
>
> Now, the only thing that you allege here about the confession not being voluntary, you said he wouldn't leave his father go until he made his statement. What do we have here? The man in custody, he gets down to the bureau or Central Detective Headquarters at 11th and State at 6:00 p. m., by 7:35 he is making a statement in the presence of the other 3 defendants and the father was one of the best witnesses the State had, the father said he was sitting in this office next to the office where this glass partition was and that he sat there and he could see Otis McNeil, Jr. in the next room and at no time did he hear any unusual noises, in fact, he proved that what Otis McNeil said didn't happen at all, that he was slapped and they stood on his shoulders, and there was no outcry and then, Otis McNeil, Sr., they allowed him

278

to talk to his son before he left the Central District Police Station and the father himself said Otis Jr. never complained at any time about being mistreated.

In People v. Ackerson, 37 Ill2d 117, 224 NE2d 849, the court said at page 121:

> The trial court determined these questions in a preliminary hearing and found that the confessions were voluntary. On review such determination will not be disturbed unless manifestly against the weight of the evidence, or unless the court has committed an abuse of discretion.

Under this standard we are unable to disturb the trial court's determination that the confession was not coerced.

■ Defendant's second contention is that his statement (People's Exhibit 6) should not have been admitted into evidence because it was an unsigned hearsay document. Detective Deas testified that he questioned defendant and reduced to writing both the questions and the answers; that People's Exhibit 6 was a true and correct transcript of the questions asked and the answers made by the defendant. Defendant refused to sign the document at the end of the questioning. In People v. Perkins, 17 Ill2d 493, 500, 162 NE2d 385, the court held that after police testimony that the writing was a true and correct transcript of the questions asked and answers made by defendant, "it was admissible, if relevant and material, even though it was unsigned." See also People v. Dogoda, 9 Ill2d 198, 137 NE2d 386; People v. Hanson, 31 Ill2d 31, 198 NE2d 815.

■ ■ Defendant contends thirdly that some of the evidence introduced against him was the product of an illegal search and seizure. Defendant makes no argument about the stolen furs discovered in his apartment since the police had a search warrant for his apartment. However, he argues that the stolen furs discovered at 2158

South Millard should have been suppressed since the police had no warrant to search those premises. On a motion to suppress evidence defendant has the burden of proof. Ill Rev Stats 1965, c 38, § 114–12(b). Defendant failed to offer evidence on the circumstances of the recovery of the furs from 2158 South Millard. There is no evidence indicating any illegal search or seizure—from all that appears, the inhabitant of 2158 may have given his consent.

Defendant also argues that the knotted nylon stockings found in the car in the garage behind his apartment building should have been suppressed. However, at the hearing on his motion to suppress, defendant failed to show the circumstances under which the recovery of the stockings was made. Here again there was no evidence of an illegal search or seizure. We therefore find no basis for disturbing the trial court's denial of the motion to suppress.

Defendant's final contention is that he was prejudiced by the State's failure to connect the knotted stockings to him personally. This evidence was found in a car which belonged to David Moore, a participant in the robbery. Two of the robbers wore stockings over their faces and defendant is connected to the robbery both by the stolen furs found in his home as well as by his confession. Since defendant made no objection to the introduction of the stockings at the trial, any question as to their admissibility has been waived. People v. Luckett, 24 Ill2d 550, 554, 182 NE2d 696.

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.