(No. 43800.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. OTIS McNEIL, Appellant.

*Opinion filed November 30, 1972.*

WARD, J., took no part.

GOLDENHERSH, J., concurring in part and dissenting in part.

WILLIAM J. MARTIN, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General,

and ELMER C. KISSANE and JAMES E. STERNIK, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE DAVIS delivered the opinion of the court:

This is an appeal from a judgment dismissing the defendant's second amended petition filed pursuant to the provisions of the Post-Conviction Hearing Act (Ill.Rev. Stat. 1969, ch. 38, par. 122—1 *et seq.*), wherein he alleged various violations of his constitutional rights.

The defendant, Otis McNeil, was indicted in the circuit court of Cook County for the armed robbery of a fur salon. He was found guilty by a jury and was sentenced to a term of not less than 15 nor more than 25 years in the State penitentiary. His conviction was affirmed by the appellate court (99 Ill.App.2d 273), and thereafter he filed a *pro se habeas corpus* petition in the U.S. District Court, which was dismissed because he had failed to exhaust his State remedies.

He then filed a *pro se* petition for relief under the Post-Conviction Hearing Act. Appointed counsel filed an amended petition on his behalf, but later withdrew his appearance, and present counsel, who was retained by the defendant's mother, then filed a second amended petition which was dismissed on the State's motion without an evidentiary hearing. This appeal followed.

Although the doctrine of *res judicata* would normally preclude any consideration of defendant's contentions (*People v. Collins (1968), 39 Ill.2d 286, 289*), nevertheless, we deem it not inappropriate to discuss certain issues which were not presented to the appellate court.

The first of these is that certain evidence against the defendant was the result of three illegal searches and seizures, only one of which was considered on direct appeal by the appellate court.

The defendant was arrested at Lawndale and Ogden Avenues in Chicago on the day of the robbery of the fur

salon in question. Following his arrest, police searched his apartment at 2156 South Millard Avenue, pursuant to a search warrant, where they found seven fur pieces with the label of the fur salon from which they had been stolen—John D. Somers, Inc., Chicago. One of these items, a mink stole, was admitted in evidence. A garage behind the building, for which no search warrant had been issued, was also searched, and two knotted ladies nylon stocking masks found there in a parked car owned by co-defendant Moore, were introduced in evidence. A third building located at 2158 South Millard Avenue, which was adjacent to the above described address, was searched without a warrant, and 28 fur pieces taken in the robbery were recovered, but were not offered in evidence.

The warrant authorizing the search of 2156 South Millard Avenue was obtained upon the affidavit of Detective Lopez which stated that he had "received information from a confidential informant," who had furnished "reliable information in the past," to the effect that the informant had, on that date, been in the second floor apartment at 2156 South Millard Avenue in Chicago, the residence of a female Negro named Frankie McNeil, and had seen mink stoles, jackets and fur coats, valued at about $50,000, which were proceeds of an armed robbery of Somers Furriers, which robbery occurred that day.

The defendant argues that the affidavit upon which the warrant was issued was insufficient for failure to supply facts corroborating the alleged reliability of the informant. We do not agree. In the companion case of *People v. McNeil, 52 Ill.2d 409,* we held this warrant and the search thereunder to be valid and observed, in evaluating this affidavit, that the judge was entitled to consider the imperative necessity for quick action and the fact that the specificity of the affidavit practically disclosed the identity of the informer.

With respect to the searches of the garage and 2158 South Millard Avenue, we note that the record shows that

the defendant did not own or have a proprietary or possessory interest in the premises searched or the things seized, and he was not on the premises when the search occurred.

Reported decisions reflect that the courts of all jurisdictions have recognized a distinction between the unreasonable search and seizure itself and the question of the admissibility of evidence so obtained. However a divergence of opinion had existed in various State jurisdictions until the decision of the United States Supreme Court in *Mapp v. Ohio (1961), 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684,* on the question of whether such evidence was subject to suppression on pretrial motion. This court had long followed the then minority rule—that of exclusion (*People v. Brocamp (1923), 307 Ill. 448; City of Chicago v. Lord (1955), 7 Ill.2d 379, 381; People v. Kalpak (1957), 10 Ill.2d 411, 428*), which had also been the prevailing rule in the Federal courts. (*Weeks v. United States (1914), 232 U.S. 383, 58 L.Ed. 652, 34 S.Ct. 341; Gouled v. United States (1921), 255 U.S. 298, 65 L.Ed. 647, 41 S.Ct. 261; Goldstein v. United States (1942), 316 U.S. 114, 86 L.Ed. 1312, 62 S.Ct. 1000.*) The pronouncements of this court, until the decision in *People v. De Filippis (1965), 34 Ill.2d 129,* were squarely in line with the Federal courts on the constitutional considerations which led to the adoption and application of the exclusionary rule, as was reflected in *People v. Castree (1924), 311 Ill. 392,* and these decisions gave full recognition to the prohibitions of our own constitution against unreasonable searches and seizures. *De Filippis* purported to add a new dimension to this rule.

The United States Supreme Court, in *Alderman v. United States (1969), 394 U.S. 165, 22 L.Ed.2d 176, 89 S.Ct. 961,* at pages 171 *et seq.* (U. S.), has stated that a fourth amendment violation "can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the

introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing. \*\*\* We adhere to \*\*\* the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."

In *Jones v. United States, 362 U.S. 257, 261 et seq., 4 L.Ed.2d 697, 80 S.Ct. 725,* the court held, among other things, that a person aggrieved by an unlawful search and seizure must have been one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else; that anyone legitimately on the premises where a search or seizure occurs may challenge its legality by motion to suppress; and that in order to have standing to challenge the legality of the search, the defendant need not allege or establish a proprietary or possessory interest in the premises searched or the things seized. However, the standing to raise the issue was decided therein under the provisions of Rule 41(a) of the Federal Rules of Criminal Procedure. Under both *Alderman* and *Jones,* the defendant must show how his constitutional rights have been violated in order to have standing to challenge the validity of a search or seizure.

In *People v. De Filippis, 34 Ill.2d 129,* at page 133, the court observed that the appellate court construed *Jones* as having no application where possession is not an element of the crime charged (as in burglary or theft) and where proof of possession merely raises a presumption of guilt. In considering *Jones,* at page 135, the court stated:

> "Rather, we see in the logic of that decision a requirement that the conventional concepts of standing must give way whenever it is necessary to prevent unfairness, and to secure to an accused *both* his constitutional protection against unlawful search and seizure and his protection

against self-incrimination. Speaking on a more specific plane, we do not see in *Jones* a proscription that possession must be an element of the crime charged, but interpret its holding as applying whenever proof of possession is sufficient to convict. But even if we are wrong in these things, there is nothing which inhibits us from extending the principle of *Jones* in such a way, and to such an extent, as to insure that the prohibition of our own constitution against unreasonable search and seizure may be made fully effective, and that its protection is not unfairly denied."

And at page 137, it further stated:

"Accordingly, and in line with *Jones,* we hold that the possession on the basis of which defendants' convictions could be obtained and enhanced was sufficient to give each of them standing to move for the suppression of the evidence alleged to have been unlawfully seized."

In the light of both *Alderman* and *Jones,* and the rationale of the dissent in *De Filippis,* we adhere to the rule requiring a defendant to establish the manner in which his constitutional rights have been violated before permitting him to challenge the validity of a search and seizure. We find that *Jones* compels no deviation from this rule and that *Alderman* requires its observance. Accordingly, any language in *People v. De Filippis (1965), 34 Ill.2d 129,* to the contrary is hereby overruled, and again our views in this evidentiary area stand in accord with Federal decisions.

Another issue which we will consider, although its inclusion as an alleged error in the post-trial motion and its omission from the errors charged on appeal would authorize the application of the waiver rule, is the display before the jury of the defendant's three untried co-defendants. They were allegedly brought into court for the purpose of lending credibility to the voluntariness of the defendant's

unsigned confession which had been made in their presence. However, the State did not call them as witnesses, but the prosecutor made identifying remarks concerning them in his final argument. The defendant urges that this total procedure was prejudicial to the extent of denying him a fair trial. We disagree.

A similar procedure was followed and condemned in *People v. McNeil, 52 Ill.2d 409,* and the rationale of that decision is applicable to the circumstances of this case.

Under the circumstances of this case we will consider the defendant's contention of incompetency of counsel. For the reasons hereafter stated we find that trial counsel, in the case at bar, was privately retained by the defendant. The law is that where the defendant has retained private counsel who is later charged to have been incompetent, such allegation presents no constitutional question in a post-conviction proceeding unless the effectiveness of counsel was of such low caliber that it amounted to no representation at all and reduced the court proceedings to a farce or sham. *People v. Rose (1969), 43 Ill.2d 273, 280.*

The record and reported cases reflect that the defendant had several retained and appointed attorneys between April 14, 1965, when he was indicted for burglary in the circuit court of Cook County in cause No. 65-1006, and April 28, 1966, when the jury found him guilty of the armed robbery of the John D. Somers fur salon, in indictment No. 65-2523—the case at bar. Between those dates he was also indicted for and found guilty of the armed robbery of the Berkowitz Fur Company in cause No. 65-2524, entitled *People v. McNeil,* which was affirmed on review. (52 Ill.2d 409.) All three cases were assigned to the Honorable Edward F. Healy, judge of the circuit court of Cook County, for trial.

Before the two armed-robbery indictments were returned, the defendant requested appointed counsel to represent him on the burglary charge. The Public Defender was appointed and defendant was released on bond. The

trial date on this charge was set for and this trial began August 6, 1965. He was represented by Assistant Public Defender Thomas Cawley. A jury was picked and the case was continued until August 9, 1965. The defendant failed to show up on that date, so Judge Healy forfeited the defendant's bond and issued a warrant for his arrest. On August 19, 1965, a hearing was held on the defendant's motion to reinstate the bond. Judge Cohen, sitting in interim for Judge Healy, released the defendant on bond and continued the case until September 8, 1965. On September 8, six days after the Berkowitz fur robbery, Judge Healy raised the defendant's bond to $10,000 for his failure to appear on August 9. Also on that day, the defendant discharged the Public Defender and retained Mr. Engelland as his private attorney to represent him on the burglary indictment. The defendant was also able to meet the $10,000 bond. Judge Healy continued the case until September 27, 1965. Four days after the defendant was released on the $10,000 bond; namely, on September 11, he was arrested for the crime of the armed robbery of the John D. Somers fur salon. Shortly thereafter, he was indicted for both the robbery of the Somers fur salon, cause No. 65-2523, and the robbery of the Berkowitz Fur Company, cause No. 65-2524.

On September 27, 1965, the defendant, represented by Engelland, moved that the burglary charge be continued until October 7, 1965. The court granted the motion. The next day, September 28, the defendant was arraigned on indictments Nos. 65-2523 and 65-2524. He was represented by Engelland at his arraignment. Engelland continued to represent the defendant on all charges until November 1, 1965, when the defendant questioned Engelland's trial strategy. Judge Healy then continued all of the defendant's charges until December 13, 1965, so that the defendant, if he chose, could retain other counsel. On December 13, 1965, retained attorneys Lee Smith and Steven Van Dorf entered their appearances on behalf of

the defendant. Judge Healy then continued the case until January 11, 1966, but admonished Smith that the defendant was finally going to trial on January 11, 1966.

On January 11, co-defendant Phillip Thomas requested a continuance and substituted counsel, while co-defendants David Moore and Fred McNeil answered ready for trial, and the defendant answered not ready. He then substituted retained counsel Seymour Vishney for previously retained attorneys Lee Smith and Steven Van Dorf, and asked that the cause be continued to January 19. Vishney immediately asked the State to make an election as to which indictment they would proceed on first.

The State elected to proceed with indictment number 65-2523 (armed robbery), which involved the four co-defendants. The court continued the case until January 19, 1966, and announced that the defendants were all going to go to trial on January 19 and that there would be no more continuances. On January 19, Vishney presented a Petition to Suppress Confession on behalf of the defendant, the State requested a continuance until January 24, and Judge Healy then set January 24 as the date for hearing on the petition. On January 25 the hearing on the defendant's Petition to Suppress Confession was completed, the petition was denied and the case was continued for trial until March 21 upon the defendant's motion.

On March 21 the court continued the case until April 8 for the purpose of handling various defense motions, including the defendant's Motion to Suppress Physical Evidence, and for trial. On Monday, April 18, the co-defendants in cause No. 65-2523 indicated that they desired to have a conference to discuss a plea of guilty. The defendant Otis McNeil demanded a jury trial on the indictment in that cause, and the court then appointed Seymour Vishney, the then-retained counsel therein, to represent the defendant on the other pending charges—No. 65-1006 and No. 65-2524.

The State then informed the court that in view of the

fact that the co-defendants in cause No. 65-2523 were pleading guilty, the State would first proceed on one of the other charges. On April 20, the defendant was tried for burglary in cause No. 65-1006 and was found guilty by the jury, but this conviction was reversed because appointed counsel had only two days to prepare for trial in that case. *People v. McNeil (1968), 102 Ill.App.2d 257.*

The defendant went to trial on indictment No. 65-2523 on April 26, 1966. The record adequately indicates that Vishney had been retained to represent the defendant in this cause—the John D. Somers' fur robbery —but that after he was convicted on the burglary charge, he wanted to discharge Vishney.

The record shows that Vishney was originally retained to represent the defendant in cause number 65-2523 on January 11, 1966, and continued such representation until April 28, 1966, when the defendant was convicted. Vishney prepared various petitions and motions on his behalf, conducted hearings thereon and discussed the case with the defendant upon many occasions, all as retained counsel. During the trial, he effectively cross-examined the State's witnesses. For three and one-half months, through all the preliminary proceedings in this case, the defendant treated Vishney as retained counsel in every respect.

On the day before the trial, after many continuances had been granted at the request of the defendant and after he had discharged the Public Defender in indictment No. 65-1006, and attorneys Engelland, Smith and Van Dorf in indictment No. 65-2523, and had expressed his desire to discharge Vishney, the defendant stated that he wanted another lawyer, but the judge refused this request and proceeded to trial with retained counsel Vishney representing the defendant.

Under these circumstances, we do not fault the trial judge for refusing to continue the trial in order for the defendant to obtain another attorney, either private or appointed. The record reflects that the defendant was a

very difficult man to represent. For about a year, while the trial court was attempting to get the defendant to trial, he substituted counsel on three occasions, all of which contributed to the delay of his trial. The facts fail to disclose a denial by the trial court of fundamental fairness to the defendant in compelling him to proceed to trial with his retained counsel. Trial court denial of a defendant's unreasonable demands or delaying tactics cannot be regarded as a denial of fundamental fairness to a defendant; nor do the facts in the case at bar indicate incompetency of counsel.

In *People v. Washington (1968), 41 Ill.2d 16,* we were likewise faced with the issue of a defendant who wanted to discharge his privately retained counsel shortly before trial. At page 20, we stated: "In view of the fact that this cause came to trial more than four months after defendant's privately retained counsel filed his appearance on behalf of defendant, and in view of the delay already engendered by the defendant's apparent failure to appear in court on the day originally set for trial, we hold that the denial of his request for additional time to employ new counsel was correct, especially where no particular need for changing counsel is stated. In *People v. Mueller, 2 Ill.2d 311,* we noted that while a defendant has the right to discharge his attorney and substitute another, 'This right is not so absolute *** that its exercise may not be denied where it will unduly prejudice the other party or interfere with the administration of justice. To hold otherwise would enable a defendant in a criminal proceeding such as this to delay his trial until he had exhausted his capabilities of acquiring defense counsel and to thus harass and delay effective prosecution of the crime.' (2 Ill.2d 316.) 'Absent justifiable basis therefor there is no constitutional right to make a new choice of counsel, with attendant necessity for a continuance because thereof, at the time the trial is scheduled to commence.' (*United States v. Cozzi (7th cir.), 354 F.2d 637, 639.*) In view of the prior delay caused by

defendant in this case, there was ample reason for the trial judge to require the defendant to proceed to trial with counsel whom defendant had previously chosen and with whom no dissatisfaction was expressed until the day set for trial. We find no abuse of trial court discretion in this regard. *Good v. United States (9th cir.), 378 F.2d 934; People v. Loving (Cal.App.), 65 Cal. Rptr. 425."*

Another substantial portion of the defendant's charge of incompetency of counsel centers around his contention that certain evidence used against him was obtained as a result of three separate unlawful searches and seizures. We have held adversely to the defendant on this issue as a matter of law, and therefore find this contention without merit. Some of the other incompetency allegations relate to procedures within the area of tactical decisions by counsel, many of which presented an optional choice.

In view of the overwhelming evidence of the defendant's guilt, the case was difficult to defend. Also, the defendant's propensity to conduct his own trial created many difficulties. One glaring example of such circumstance was when, in open court, he instructed his retained counsel to make no argument to the jury. The fact that no witnesses were called by the defendant at the trial proper is understandable. However, he and his father testified on his behalf at the hearing on the Petition to Suppress Confession, and counsel represented the defendant adequately on this issue.

On the record before us, we cannot but conclude that the defendant received a fair trial free of constitutional error.

The circuit court of Cook County correctly denied the defendant's second petition for post-conviction relief, and its judgment is therefore affirmed.

*Judgment affirmed.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.

MR. JUSTICE GOLDENHERSH, concurring in part and dissenting in part:

I concur in the affirmance of the judgment but cannot agree with that portion of the opinion which discusses the allegedly illegal searches and seizures and purports to overrule *People v. De Filippis, 34 Ill.2d 129.*

With respect to the seizure of the furs from the apartment at 2158 South Millard Avenue, the record shows that a police officer stationed in a building directly across the street from 2156 South Millard saw defendant carry a bundle wrapped in a bed sheet from the second floor of 2156 South Millard to the second floor of 2158 South Millard (see 99 Ill. App. 2d 273, 275) and that this information was communicated by walkie-talkie to the arresting officers shortly before defendant was arrested. If the issue is cognizable in this proceeding at all, it should have been decided on the obvious ground that the search of 2158 South Millard which occurred almost simultaneously with defendant's arrest was made under exigent circumstances which obviated the need for a search warrant.

Concerning the items taken from the Mustang parked in the garage to the rear of 2156, the record shows admission of the evidence without objection (see 9 Ill. App. 2d at 280) or assuming, *arguendo,* error of constitutional dimension, that the error, beyond reasonable doubt, was harmless.

In my opinion *De Filippis* correctly states the law and its gratuitous overruling, albeit by way of pure *dictum,* is unfortunate. My reasons for so stating are eloquently expressed in the partial dissent of Mr. Justice Fortas in *Alderman v. United States, 394 U.S. 165, 201, 22 L. Ed. 176, 203, 89 S. Ct. 961,* wherein he said, "The effect of the Court's decision, bluntly acknowledged, is to add another to the long list of cases in which the courts have tolerated governmental conduct that violates the Fourth Amendment. The courts have done this by resort to the

legalism of 'standing.' See, *e.g.*, *Goldstein v. United States, 316 U.S. 114, 121, 86 L. Ed. 1312, 1318, 62 S. Ct. 1000, 1004 (1942)*; *Wong Sun v. United States, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963)*. *Cf.* *United States v. Jeffers, 342 U.S. 48, 96 L. Ed. 59, 72 S. Ct. 93 (1951)*; *Jones v. United States, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725 (1960)*; *Mancusi v. De Forte, 392 U.S. 364, 20 L. Ed. 2d 1154, 88 S. Ct. 2120 (1968)*.

"It is a fundamental principle of our constitutional scheme that government, like the individual, is bound by the law. We do not subscribe to the totalitarian principle that the Government is the law, or that it may disregard the law even in pursuit of the lawbreaker. As this Court said in *Mapp v. Ohio, 367 U.S. 643, 659, 6 L. Ed. 2d 1081, 1092, 81 S. Ct. 1684, 1694 (1961)*, 'Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence.'

"The Fourth Amendment to our Constitution prohibits 'unreasonable' governmental interference with the fundamental facet of individual liberty: '[t]he right of the people to be secure in their persons, houses, papers, and effects.' Mr. Justice Jackson recognized the central importance of the Fourth Amendment in his dissenting opinion in *Brinegar v. United States, 338 U.S. 160, 180-181, 93 L. Ed. 1879, 1893, 69 S. Ct. 1302, 1313 (1949)*: 'Among deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government. And one need only briefly to have dwelt and worked among a people possessed of many admirable qualities but deprived of these rights to know that the human personality deteriorates and dignity and self-reliance disappear where home, persons and possessions are subject at any hour to unheralded search and seizure by the police.' "

In *Cooper v. California, 386 U.S. 58, 62, 17 L. Ed. 2d 730, 734, 87 S. Ct. 788,* Mr. Justice Black, speaking for the majority, said, "Our holding, of course, does not affect the State's power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so." Section 6 of article I of the constitution of 1970, in my opinion, sets a higher standard than does the fourth amendment and in this case this court has regressed from that standard.