The People of the State of Illinois, Plaintiff-Appellant, *v.* Thomas Pierce *et al.,* Defendants-Appellees.

(No. 11919;

Fourth District—September 5, 1973.

Basil G. Greanias, State's Attorney, of Decatur, (Lawrence R. Fichter and Patrick M. Walsh, Assistant State's Attorneys, of counsel,) for the People.

Kenneth Kinser, of Decatur, for appellees Thomas Pierce and Thomas Hasbrouck.

Dwight Doss, of Monticello, and James W. Johnson, of Woollen, Brown & Hawkins, of Decatur, for appellees William Goodman and Bruce Goodman.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

This is an appeal by the People from judgments of the circuit court of Macon County entered April 27, 1972. The judgments quashed a search warrant and suppressed evidence seized by police officers on January 12, 1972. Oral argument was waived. Because of the confused state of the record, including disagreement as to what the trial judge ruled, it is necessary to go into the procedural and factual background. Most of this information has been acquired, not from the briefs, or ex-

cerpts from the record, but rather from a tedious examination and analysis of the record on appeal. Actually this appeal involves judgments entered in four separate cases, at least one of which bears no apparent relationship with any one or more of the others.

The order of events is as follows:

On January 12, 1972, Officer Virgil Stolz of the Decatur Police Department filed a complaint for a search warrant which sought authority to search the person of Thomas Hasbrouck and the premises occupied by him and Thomas Pierce at 825 West North Street, in Decatur, Illinois, including the upstairs apartment and grounds, and the basement, for instruments, articles and things which have been used in the commission or which constitute evidence of the offenses of burglary, possession of a controlled substance, and sale of a controlled substance, and to seize a quantity of controlled substances and amphetamines, barbiturates and amphetamines described as MFG#TAT B 7.8, red or pink in color, singly or in packets.

On February 10, 1972, in cause 72 CF 15, the grand jury returned a four-count indictment charging Thomas Pierce and Thomas Hasbrouck with (1) unlawful possession of a controlled substance, to-wit: amphetamines, in that they possessed with intent to deliver the drugs; and (2) unlawful possession of a controlled substance in that they knowingly possessed a quantity of amphetamines; and (3) unlawful possession of hypodermic needle or syringe; and (4) unlawful possession of cannibas in excess of 30 grams, all offenses having been committed on January 12, 1972.

On February 10, 1972, in cause 72 CF 16, the grand jury returned a two-count indictment charging the defendants Bruce Goodman, William Goodman, Thomas Pierce and Thomas Hasbrouck with the offense of burglary of the office of Dr. L. L. Rubel on January 16, 1972, and with the offense of theft of property exceeding $150, the property being owned by Dr. Rubel and consisting of a quantity of amphetamines, barbiturates, other controlled substances and medical syringes and hypodermic needles.

On February 10, 1972, in cause 72 CF 18, the grand jury returned an indictment charging the defendant William Goodman with the offense of burglary of the office of Dr. Vincent P. Zarcone, the offense allegedly having occurred on the 17th or 18th of November, 1971.

On February 10, 1972, in cause 72 CF 51, the grand jury returned an indictment charging William Goodman and Bruce Goodman with the offenses of (1) possession of amphetamines with intent to deliver; and (2) the unlawful possession of a quantity of amphetamines, both offenses allegedly committed on January 12, 1972.

On February 23, 1972, in cause 72 CF 15, defendants-appellees Thomas Hasbrouck and Thomas Pierce filed their "Motion to Quash Search Warrant and to Suppress Illegally Seized Evidence". The relief sought was the quashing of the search warrant above referred to, as well as the suppression of the following items of evidence:

"(a) 1500 to 2000 pills
(b) a quantity of hypodermic needles
(c) a quantity of fix kits
(d) a quantity of syringes
(e) a quantity of other pills
(f) a quantity of marijuana
(g) a quantity of marijuana pipes
(h) a quantity of miscellaneous personal property."

No written motions to quash and suppress appear in the record in cases 72 CF 16, 72 CF 18, or 72 CF 51. At the hearing on the motion, counsel for defendants in the last three designated cases indicated that they had either filed identical motions in those cases or adopted the motion filed in 72 CF 15, and the hearing was apparently conducted on that premise. Paragraphs 7, 8, 9 and 10 of the motion read as follows:

"7. The Defendant, Thomas Pierce, demanded that police obtain a valid search warrant before searching the apartment at 823 [*sic* 825] West North Street, therefore, the police did not have permission to exercise a warrantless search.

8. In the time between the Defendant's denial of the police request to search and the issuance of the search warrant in question; reliable witnesses who are residents of the buildings; saw unidentified police officers enter the building and heard these officers enter and go through the defendant's apartment.

9. This search without the Defendant's permission and before the issuance of a search warrant was illegal under the United States Constitution and the Illinois Revised Statutes and the fruits of this search should be excluded from the consideration of the Court.

10. There is no way to distinguish between evidence seized in the warrantless search and that seized in the search made with the warrant. Therefore, this evidence cannot be admitted on the grounds of a proper search warrant. To do so would be to effectively abrogate the defendant's rights with respect to his privacy and home, as guaranteed by both federal and state law."

Other portions of the motion challenged the validity of the search warrant.

The motions to quash and suppress were heard on March 8, 1972. Briefly summarized, the evidence indicates that officers went to the apartment on the second floor of a house located at 825 West North Street in Decatur, Illinois, during the afternoon of January 12, 1972. It appears that defendants Pierce and Hasbrouck lived there. The officers told Pierce that they were investigating narcotics and controlled substances violations and asked Pierce's consent to search the apartment, Pierce refused. He was arrested and taken to police headquarters. Officer Stolz went to the State's Attorney's office and was in the process of securing the search warrant in question. At the suggestion of an investigator in the State's Attorney's office, officers of the Decatur Police Department were called and directed to go to the Pierce apartment and arrest all persons found within in order to prevent destruction of evidence. Access to the second floor apartment, in which Pierce and Hasbrouck resided, is normally gained by entry through the front door of the house, thence up a stairs. The officers found the front door of the house locked. The Wellers, who occupied the first floor apartment, permitted (on request) one of the officers to go through the Weller apartment to the common hall into which the front door of the house opened. This officer then unlocked the front door from the inside and the other officer entered. Both went upstairs to the Pierce-Hasbrouck apartment. They testified that the door to the apartment was ajar. They knocked several times and identified themselves but received no response. They then entered, walked down a hall and looked into the rooms to ascertain whether anyone was present. They observed no one. They testified that they observed no narcotics or contraband, that they were looking for persons, not things, and that their sole purpose in entering the apartment was to effectuate their order to arrest all persons found in the apartment. They also testified that they were only in the apartment for two or three minutes and then waited outside until Stolz arrived with the search warrant, following which a complete search ensued.

On behalf of defendants the Wellers, occupants of the first floor apartment, testified that they heard persons walking around in the apartment, the sound of furniture being moved, and that persons were present in the apartment for a much longer period of time than the two or three minutes as related by the officers.

Prior to the commencement of this hearing the State's Attorney and defense counsel agreed that the hearing would first be directed to the issue raised by paragraphs 7 and 8 of the motions. The trial judge stated "again to try to organize or to see what we're hearing, paragraphs 7 and 8 raise a matter which if found to be true, would solve all the balance. In other words if there was an illegal entry, search and seizure without

permission, without authority—a valid warrant, and the result was the obtaining of illegal evidence, that is commingled with any subsequent evidence so that you couldn't sort out, on the proof of that it's over." The assistant State's Attorney responded, "The People concede that point—The People will concede the point that even if we had obtained a valid warrant, that if prior to that time they—there had been an illegal search, there wouldn't be—it would be a moot point." The trial judge then stated, "All right. Now is there any quarrel with that organization, taking the more vital question first, illegal search and seizure as far as contentions, entry without permission, without warrant?" All counsel agreed that they would indeed address the problem of whether or not an illegal search and seizure had occurred prior to the search conducted under the authority of the warrant, and the hearing was confined to that issue. At the conclusion of the hearing of March 8, the trial judge deferred ruling until the following day. On March 9, in the presence of counsel the trial judge orally ruled that the motions to quash and suppress were allowed. In stating his reasons for the ruling he stated, in part, "* * * unquestionably a man's apartment cannot be entered for a search against his consent without legal process of a valid search warrant. When an entry cannot thus be made for a search, can entry be made for purported purpose of making arrest of anyone present, and by that subsequent entry in effect make a search? * * * This problem in this case arises when the policemen legally barred from entry to make a search, then cross the threshold subsequently to take into custody anyone found therein. The crossing was not rendered legal by the mere fact that the door was slightly ajar * * * and that silence throughout the apartment prevailed. The trespass that was then committed, even though purportedly to secure the premises and preserve any possible evidence, created a taint that permeates the technical requirements of an acceptable search and seizure. * * * This ruling is not to say * * * that the Court is accepting as true the defendants' version that an actual search occurred without a search warrant. The Court is saying that the technical requirements for a lawful entry of the defendant's apartment were not fully complied with as required by law and thus the ensuing search proceedings must be suppressed."

On March 22, 1972, the State's Attorney filed a petition for rehearing. In essence this motion urged that the trial judge had not considered the validity of the search warrant in question, nor had he heard evidence on that issue which had been raised in defendants' original motions and that defendants' had the burden of proof on that issue. On March 23, 1972, the petition for rehearing was heard. At this hearing, among other things it became apparent that the State's Attorney and defense counsel

disagreed as to what the trial judge had held on March 9th. The State's Attorney said "If I understand the Court's ruling correctly it is that the officers made an illegal entry into the apartment and that any subsequent entry, legal or otherwise, and products obtained therefrom was tainted by reason of the illegal entry." Defense counsel stated "* * * * once it was determined that the *first search* was illegal due to an illegal entry or due to tainted evidence, it was not necessary, * * * The Court's ruling, ruled that the evidence be, was illegally seized and, of course, the search invalid * * * I believe the Court's ruling was based on the fact there is no way to distinquish between evidence discovered or seized *in a second search.* I don't think it is necessary that each article be defined as being found in the first or second search. The Court's ruling was that the search was illegal, the first search regardless of what the second search had produced." The trial judge then remarked that "There is to the objective of getting a clear, concise, complete but inexpensive record." He also stated, "Do counsel by any chance have before you what is now an old case in which Justice Gunn while he was on the Supreme Court was passing on the question of a voluntary confession? And in ruling on that he states that when the cat is illegally let out of the bag and can't be returned to the bag, the damage is done and any ensuing confession is ruled invalid, is not a voluntary confession within the rules. I think there he uses the word 'tainted', but he talked about the cat being let out of the bag and can't be put back. That is the case I was thinking about when I ruled, that is the very foundation for my ruling, and * * *. It's not the Wellers' testimony and it's really the testimony of the policemen themselves that they entered, they went throughout the hall and looked in every room *and they made a, what I termed a search.* * * * that once you have corruption, you can't correct it; * * *."

At this juncture the following colloquy occurred between the court and counsel:

"MR. JOHNSON: May I ask the Court if its former ruling or ruling made in the hearing earlier still stands as the Court's ruling in this case?

THE COURT: You're asking what?

MR. JOHNSON: Whether the Court is changing its ruling on this case after the original hearing—is that the opinion that will stand?

THE COURT: Well, it's the same as far as I am concerned. What I'm doing is saying petition to reconsider denied. I am not changing my position, in that I am saying there was a mistake made, and the mistake that was made that the officers entered

the apartment without authority, having been previously denied entry. I haven't changed it at all, but I'm trying to clarify the theory, and the theory is what came from—at least in my thinking—from this old deal, Justice Gunn's position on a voluntary confession.

MR. JOHNSON: *But you did rule that there was a search?*

THE COURT: *No, I didn't. I did not. I said there was a trespass of the premises. I don't know if there was—there could have been a search,* in that the entry made a search possible. They claimed that they didn't make a search. They only went and looked around but they created circumstances where a search was possible, and as I pointed out then—and this off of the record. There's no point in building this up where somebody may have to pay for it."

On April 27, 1972, the trial judge entered a written order quashing the search warrant and suppressing the evidence. The findings of fact are contained in paragraph 6 of the order and read as follows: "The Court further finds that an illegal entry and trespass was made by the City of Decatur, Illinois, Police Officers, of the premises at 825 West North Street in the said City of Decatur, Illinois, on the 12th day of January, 1972, prior to the issuance of a search warrant authorizing a search of said premises while said premises were then and there the residence and place of abode of Thomas Pierce and Thomas Hasbrouck." His conclusions of law are set forth in paragraphs 7 and 8 (paragraph 8 being stated in the alternative) of the order and are as follows:

"7. That said illegal entry and trespass tainted and permeated the technical requirements of an acceptable and legal search and seizure.

8. That the defendants, William Goodman and Bruce Goodman, are not required to prove a possessory or proprietary interest in the premises or property seized,

OR

8. That the defendants, William Goodman and Bruce Goodman are entitled to the protection of the Fourth and Fifth Amendments to the United States Constitution and Article I of the Illinois Consitution."

We have recited, in detail, the foregoing remarks of the trial judge and counsel, together with pertinent portions of the written order since the State's Attorney insists that no search occurred at the time of the initial entry into the premises and that "* * * the Court made a finding of fact that there had been no prior search in view of the positive

evidence that there was none." He refers to a comment made by the trial judge at page 102 of the Report of Proceedings to the effect "I don't think the evidence supports that there was a search in view of the positive evidence there was none, and only circumstantial evidence that there was or could have been."

■■ Counsel for defendants insist that the trial judge *did* make a finding that the officers made a search at the time of their initial entry referring to that portion of his remarks made at the March 23rd hearing where he stated "* * * they went throughout the hall and looked in every room and they made a, what I termed a search." We note that thereafter, during the same hearing, and indeed on the following page of the transcript when counsel inquired if the court had ruled that a search had been made the court responded, "No, I didn't, I did not. I said there was a trespass of the premises. I don't know if there was—there could have been a search, in that the entry made a search possible." The written order contains no finding that a search was made during the initial entry nor does it contain a finding that no search occurred. There are portions of the record, as above indicated, which tend to support each of the contrary contentions. We do not propose to settle this point. It is not our function to speculate as to what the trial court held, intended to hold, didn't hold or didn't intend to hold.

We have some further observations about this record. Only one notice of appeal appears in the record. It appears in the common law record pertaining to case 72 CF 15. We assume that a proper notice of appeal was filed in the other three cases, that assumption is based on a search of the records in cases 72 CF 16, 18 and 51, each of which contains a docket entry, which recites that a notice of appeal was filed. Only one order appears in the record, and it too appears in the common law record pertaining to case 72 CF 15. We assume the identical order was entered in cases 72 CF 16, 18 and 51, and again this assumption is predicated upon an examination of the docket sheets in each of the last three mentioned cases, which contain identical entries made April 27, 1972, and read "Defendants' tender order upon ruling made on motion to suppress. Tendered order examined by the People. Tendered order entered this date on suppression of evidence."

We note further that no application was made, nor order entered in this Court consolidating these four cases for purposes of appeal nor authorizing the record in one case to stand as the record in all. Neither appellant's brief, nor any of the appellees' briefs explained the presence in this court of four separate cases comprising a single appeal. No brief nor any evidence introduced during the hearing on the motion explains or

relates the defendants Goodman to the issues raised. Their names are not mentioned in the evidence nor in any of the briefs except to recite that they had filed motions to suppress. We were obliged to read the report of proceedings in order to determine how these four cases arrived here under the guise of a single appeal, and finally ascertained, from docket entries made by the trial judge, that the four cases were ordered consolidated, by him, on motion of the State's Attorney, for purposes of appeal. We are unaware of any statute or rule which authorizes such an order in the trial court.

Appellant's brief contains two assignments of error, to-wit:

1. Whether the trial court erred in suppressing the evidence seized pursuant to a lawfully obtained search warrant on the basis of a prior illegal entry, where there was no relationship shown between the prior entry and the contemporaneous issuance of the search warrant.

2. Whether the Court erred in failing to rule on the validity of the search warrant pursuant to which the evidence at the scene was seized.

With reference to point 2, the People argue that it was agreed at the beginning of the original hearing that if the court ruled that there was an illegal search prior to the issuance of the warrant all evidence seized pursuant to the warrant ought to be suppressed, and that since the trial court did not find that a search was conducted during the initial entry it was error for him not to rule on the validity of the search warrant. Since we have declined to hold *here* as to what the trial judge did or did not hold *there*, we will not consider this assignment of error.

In his reply brief the State's Attorney, pursuant to leave granted by this court, raised the question of the standing of the two defendants Goodman to move to suppress the evidence in question. The appellees Goodman filed a brief in response to the issue of standing. We note that following the court's oral ruling made at the close of the hearing on the motion to suppress, counsel inquired whether the court's ruling applied to the defendants Goodman since they were not present or occupying the apartment at the time of the "illegal search and seizure." The trial judge responded:

"I don't know where the defendants Goodman come into this picture other than their counsel's presence, and was evidently joining in the motion for whatever effect it has upon those defendants they haven't been mentioned in the evidence. The charges I know nothing except there are pending charges. I have the file in 72 CF 16 where they're named as defendants. I haven't

examined their motion during what I heard; their names were never mentioned as far as being present or in possession or anything else. I don't know where they come in on this * * * This ruling is not as to defendants. This ruling is as to evidence and as far as saying this evidence can't be used, it would apply to anybody against which it would be used against, is my off-hand opinion, and again I am not familiar as to specifically how they're affected by the ruling. I think it would follow that any illegally seized evidence could not be used against any person."

We share the puzzlement of the trial judge on this point. His subsequent order finding that the Goodmans had standing was made in an *evidentiary* vacuum.

There is no evidence that either of the Goodmans was present in the apartment when the evidence was seized; there is no showing that the People intended to use the evidence against the Goodmans; there is no showing of a possessory or proprietary interest either in the premises or in the evidence itself; there is no showing that either or both of the Goodmans were overnight guests of Pierce and Hasbrouck. We do not mean to suggest what evidence would have supported the trial judge's finding that the Goodmans had standing to move to suppress the evidence in question; rather, we emphasize the fact that there was not a shred of evidence introduced, in the hearing on the motion to suppress, upon which the finding could be predicated or sustained here. Section 114—12(a) of the Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 114—12(a)) provides that "A defendant aggrieved by an unlawful search and seizure may move the Court for the return of property and to suppress as evidence anything so obtained * * *."

This portion of the statute provides that "a person aggrieved" may move to suppress evidence. The statute does not appear to allocate the burden of proof on that issue. In *People v. McNeil*, 53 Ill.2d 187, 290 N.E.2d 602, the Illinois Supreme Court held: "* * * we adhere to the rule requiring a defendant to establish the manner in which his constitutional rights have been violated *before permitting him to challenge the validity of a search and seizure*." This holding squarely allocates the burden, on the issue of standing, on the defendant. The fact that the defendants Goodman are named as co-defendants with Pierce and Hasbrouck in one of these cases is a circumstance which does not, in and of itself, bestow standing. The question of derivative standing has finally been resolved in *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, in the following language which holds that a contention of illegal search and seizure in violation of Fourth Amend-

ment guarantees "* * * can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing. * * * We adhere to * * * the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." Since, as we have observed, the evidence is totally lacking on the issue of standing, there is simply no evidentiary basis for the finding of standing as to William Goodman and Bruce Goodman. The order quashing the search warrant and suppressing the evidence, as to them, is therefore reversed.

■■■ The parties and the trial judge were dealing with the application of the exclusionary rule of evidence which implements the constitutional guarantee embodied in the Fourth Amendment and which specifies "The right of the People to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures * * *." The purpose of the rule, stated in general terms, is to penalize the securing of evidence in violation of constitutional guarantees by denying to the prosecution the use of evidence so obtained. (*Mapp v. Ohio*, 367 U.S. 643.) The essence of the issue is that if invasion of the defendant's guarantee against unreasonable search and seizure yields evidence or clues which lead to evidence (as in *Silverthorne Lumber Co. v. United States*, 251 U.S. 385), which the prosecution seeks to use against him, the evidence so obtained is inadmissible. Here the trial judge made a finding that a trespass had been committed. The record is unclear as to whether he found that the trespass involved a search. He made no finding that by means of the trespass the prosecution acquired information upon which the request for the search warrant was predicated, or that any evidence was observed, obtained or seized. The mere finding of trespass does not invoke the rule. On this record, absent a clear and specific ruling on the question as to whether or not a search was conducted at the time of the initial entry into the apartment, we have no choice but to remand for further findings.

We therefore remand this case with directions that the trial judge make a specific finding as to whether a search was made during the initial entry into the premises. In order to avoid fragmenting the issues on appeal, we further direct that a specific finding be made as to the validity of the search warrant and the search conducted under authority of the warrant. Appropriate findings of fact and conclusions of law should be stated pursuant to the mandate of section 114—12(e) of the Code of Criminal Procedure. A supplemental record of the proceedings

had upon remand, is ordered to be filed in this court, including a transcript of additional evidence taken, if any. The issues undecided by this opinion will be held in abeyance pending the filing of the supplemental record.

Reversed in part, and remanded with directions.

CRAVEN, P. J., and TRAPP, J., concur.