THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* PERCY C. BROWN, Defendant-Appellant.

(No. 12525; ▮▮▮▮▮▮▮▮▮)

Fourth District—July 24, 1975.

Richard J. Wilson and Thomas Nelson, both of State Appellate Defender's Office, of Springfield, for appellant.

James R. Burgess, Jr., State's Attorney, of Urbana (Robert James Steigmann, Assistant State's Attorney, and James Carlton Dedman, Law Student, of counsel), for the People.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Defendant Percy C. Brown appeals from a denial by the circuit court of Champaign County (following a hearing) of his petition for post-conviction relief in which he alleged he had been denied effective assistance of counsel at his murder trial. The case was submitted to the jury solely on the issue of defendant's guilt of murder. The jury found defendant guilty, and the convitcion was followed by a sentence of 30 to 60 years' imprisonment.

On appeal to this court, defendant contends that he was unconstitutionally denied effective assistance of counsel by reason of the fact that his trial counsel acceded to defendant's decision not to present the issue of voluntary manslaughter to the jury. It thereby required the jury to decide his guilt or innocence on the murder charge alone, when the evidence would sustain a conviction for either voluntary manslaughter or murder. The conviction of murder in that case was affirmed. (*People v. Brown*, 130 Ill.App.2d 672, 267 N.E.2d 16.) In the direct appeal in that case defendant raised contentions that (1) the court should have, sua sponte, given an instruction on voluntary manslaughter; (2) the court should reduce the degree of the offense from murder to manslaughter under Supreme Court Rule 615(b); (3) the defense of self-defense had been established as a matter of law; and (4) the statutory definition of murder and involuntary manslaughter are so identical as to offend the standards of due process. The court ruled adversely to defendant on all the contentions. The major portion of the opinion was devoted to the issue of whether the court should have given an instruction on voluntary manslaughter, sua sponte. The appellate court found there was no abuse of discretion in the trial court's failure to give such instruction based on the precedent of *People v. Taylor*, 36 Ill.2d 483, 224 N.E.2d 266.

On September 2, 1971, defendant filed a pro se petition for a post-conviction hearing under section 122—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, § 122—1.) Counsel was appointed to represent defendant on his post-conviction petition. The post-conviction hearing was transferred to a judge other than the judge who had tried him in his conviction for murder. Following a 2-day hearing on the post-conviction petition, the judge entered an order dismissing the defendant's petition.

At the hearing on the post-conviction petition (and on this appeal) defendant attempted to show that he had been denied effective assistance of counsel during his murder trial. The contention is premised on the fact that his appointed counsel did not handle the issue of the submission of a voluntary manslaughter instruction properly. By reason of the nature of the contention, we conclude that the issue has not been

waived by its not being included on his direct appeal. *People v. McNeil,* 53 Ill.2d 187, 290 N.E.2d 602; *People v. Savage,* 8 Ill.App.3d 162, 289 N.E.2d 460.

Defendant contends his counsel allowed him to make the decision not to tender a voluntary manslaughter instruction knowing that defendant only had a second-grade education and also contends that the attorney did not adequately explain the risk of conviction for murder and what counsel's own advice would be in the matter. He also asserts that his counsel should have made that decision concerning the manslaughter instruction himself because of defendant's lack of knowledge and for the reason that this might be considered to be a delicate, tactical decision requiring legal expertise to evaluate, properly, the factors going into the making of such decision. The State asserts that the attorney for defendant properly allowed the defendant to make the decision after he was adequately informed of all the relevant factors involved and after he had been given the defense counsel's professional opinion of the odds he faced and what counsel's own advice would be. The State also points out that defendant at one point in his testimony at the post-conviction petition hearing claimed defense counsel at the trial had made the decision not to tender a voluntary manslaughter instruction and that the defendant did not make the decision. This is inconsistent with the position taken on the appeal before us at this time.

It appears from the record that at the instruction conference which was held after presentation of evidence at defendant's murder trial, the special prosecutor asked defendant's counsel if he wanted the jury instructed on voluntary manslaughter. The attorney responded that he thought the judge would so instruct regardless of what he said, but at the hearing on the post-conviction petition, the attorney explained he meant that he thought such an instruction would be given by the court, because the special prosecutor would have asked for one because of the evidence in the case. He did not mean that he thought the court would instruct sua sponte. The court indicated to both attorneys that it would not submit a manslaughter instruction on the court's own motion.

The special prosecutor again indicated that he was not going to submit the instruction unless the defense counsel was in agreement. He suggested that defense counsel consult with defendant on the matter. The defense attorney observed that he did not know how helpful it would be, but he said he would consult with his client. A recess was taken and the attorney responded, "He [defendant] decided on 'murder or not guilty'." The court said, "Is that what he wants to do?" And the attorney responded, "That is my instruction from my client. I might say it was my

inclination, too. I didn't have the guts. We're going to ask the court not to instruct on manslaughter."

The attorney also indicated that he had talked with defendant many times on this point and defendant understood the significance of murder and manslaughter and juries. Defense counsel stated that he told the defendant he believed the evidence presented had shown a manslaughter case rather than a murder case. He told defendant that when a jury was faced with a choice of murder, manslaughter or not guilty, in his experience, a jury was somewhat more inclined to compromise and take the manslaughter verdict. When faced with a choice between murder and "not guilty" he speculated they might get a hung jury with at least one juror's unwillingness to interpret the evidence as mandating a murder conviction. Both defendant and the attorney discussed this possibility. The attorney also explained the difference in the penalty between murder and manslaughter to the defendant. It was the defense counsel's feeling which he expressed to defendant that if murder alone was sent to the jury there was an 80% chance of conviction, a 20% chance of acquittal, and a greater than 20% chance of a hung jury. While this had been explained in general to defendant, the attorney was not sure if he had told Brown of these percentages. He definitely indicated to the defendant that if manslaughter was offered as a possibility to the jury it would seem most likely that the verdict returned would be for manslaughter and that if murder alone were presented to the jury that guilty was the most likely verdict, although there was some chance of a hung jury and of acquittal.

The attorney testified that he was sure defendant understood the possibilities and what he had been told by counsel. Defense counsel explained that he was reluctant to make a decision to go on murder alone because he knew it was a gamble. In his mind the safest thing was to put the manslaughter instruction in, although he felt surely that defendant would be convicted of that offense. In explaining his statement of "I didn't have the guts" such counsel indicated he admired defendant for making the decision to go for murder or nothing. He stated that as an attorney he had to be more cautious than the defendant was being. He doubted that he told the defendant that he as counsel wouldn't have the "guts" to do that. The attorney indicated that defendant had been well informed as to the issues since they had been talking about the matter for several months. It was also pointed out that defendant had rejected a "deal" for a manslaughter plea. Defendant, however, indicated that while his attorney was trying to work out a deal, the best the State's Attorney would agree to was a 150- to 199-year sentence and a negotiated plea to the murder charge. He admitted that his attorney may have told him of man-

slaughter, but he now says he didn't understand what it meant. Apparently, the trial court accepted the evidence of the attorney, rather than that of defendant, and concluded, in view of the inconsistencies in defendant's testimony, that the defense counsel's testimony more accurately expressed the facts with respect to the issues.

At the hearing, the defendant presented a former public defender of Champaign County who testified as an expert witness and who stated that under the facts of this case he believes that the usual attorney in Champaign County would tell his client he was going to be convicted or murder and that he as an attorney, and the usual counsel in such position, would not follow a defendant's instructions not to have a manslaughter instruction given in the case. He testified that he did not have any personal knowledge of any other attorneys having had a defendant who did not follow their advice to include a manslaughter instruction. He stated that if he ran into something of this type he would go to the judge and ask to be permitted to withdraw from the case if a defendant refused to allow a manslaughter instruction, when the attorney's professional judgment indicated that one should be given to protect the best interests of defendant.

The trial judge found that there had been no incompetence of counsel. The judge even observed that he did not believe the evidence was such that a jury would certainly have found defendant guilty of voluntary manslaughter and that a murder conviction still might have been the result. He concluded that there was no assurance that the giving of the instruction on voluntary manslaughter would have changed the outcome of the case.

■■ Denial of effective assistance of counsel can be an error of such constitutional proportions as to be the basis for a petition for post-conviction relief. (*People v. McNeil,* 53 Ill.2d 187, 290 N.E.2d 602.) When the evidence has been taken in a post-conviction proceeding, factual determinations by the judge are not disturbed by a reviewing court unless such determination is manifestly erroneous. (*People v. Bratu,* 46 Ill.2d 143, 262 N.E.2d 921.) When the alleged error is inadequate representation of competent counsel, each case must be decided on its own facts. (*People v. Austin,* 23 Ill.App.3d 520, 319 N.E.2d 306.) To merit a reversal on grounds of incompetency of counsel, a defendant must establish actual incompetence as reflected by representation received and that substantial prejudice resulted therefrom. (*People v. Witherspoon,* 55 Ill.2d 18, 302 N.E.2d 3.) A claim of prejudice to defendant cannot be based on mere conjecture. As stated by this court in *People v. Long,* 12 Ill.App.3d 974, 298 N.E.2d 784, the alleged incompetence of trial counsel must be of such character to make the trial a farce.

Some argument is made by defendant that courts of other States and Federal circuit courts of appeal have clarified or abandoned this so-called "false and mockery" standard for determining the incompetency of counsel. In *People v. Ortiz*, 22 Ill.App.3d 788, 317 N.E.2d 763, the appellate court of this State, upon being asked to disregard the Illinois tests in favor of a higher standard requiring reasonably effective representation, the court said, at page 795:

> "We do not think this proposed standard would any better set forth the prerequisites demanded by the constitutional mandate to supply defendant with effective assistance of counsel. No test can be formulated which will, in advance of close scrutiny of the trial record * * * furnish a definitive checklist of what is needed to sustain a defendant's assertion of constitutional deprivation of effective assistance of counsel. The present tests are the product of competing public policies: one, that every defendant should have available the means of securing every legal defense possible; the other, the practical recognition that no attorney is perfect, no trial tactic failsafe, few courtroom trials error-proof. A second reason for allowing some flexibility in the tests is to protect against mere pretended incompetence on the part of the attorney. * * * In our opinion, the constitutional provision requires reversal of a conviction where it is shown that the legal representation caused such substantial prejudice to the defendant as to deny him fundamental fairness, whether defendant's legal representative is appointed or privately retained. Since the tests in Illinois are adequate expressions of this rationale, they survive constitutional scrutiny."

A parallel case in this State is *People v. Rooney* (5th Dist. 1974), 16 Ill.App.3d 901, 307 N.E.2d 216, in which the review of the dismissal of a post-conviction petition which alleged incompetence of counsel was involved. In that case, neither defense counsel nor the State requested an instruction of the lesser included offense of voluntary manslaughter at defendant's murder trial. The appellate court found no error on defense counsel's part in not submitting any instruction. The court stated in that case, at page 907:

> "As stated in *People v. Taylor, supra*, it was his choice to make as to whether to give an instruction on manslaughter and thereby to risk the possibility of inducing a doubtful jury to find him guilty of the lesser offense rather than to continue to debate as to his innocence. The choice being his and being designed for his benefit it can hardly be said that in following defendant's lead his counsel was incompetent either in the trial or appellate courts nor can the

trial judge be found wanting in failing to give a manslaughter instruction on his own initiative."

■■ On the basis of the record we conclude that the decision of the court to dismiss the petition for post-conviction relief does not appear to be based on a manifestly erroneous factual determination. The record made at the post-conviction hearing, we find, does not show a denial of effective assistance of counsel. So far as the record and the finding of the trial court is concerned, it was shown that defendant was adequately advised on the issue raised.

For the reasons stated, therefore, the judgment of the circuit court of Champaign County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.